John D. HIGGINS, Jr., Plaintiff-Appellee
and Cross-Appellant,

v.

Richard HARDEN et al., Defendants-Ap-
pellants and Cross-Appellees.

Nos. 79–4360, 79–4370.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1981.

Decided May 11, 1981.

Robert M. Simpson, Rose, Klein, Marias, Los Angeles, Cal., for Richard Harden et al.

Joe R. McCray, San Francisco, Cal., for John D. Higgins, Jr.

Before SKOPIL and FARRIS, Circuit Judges, and MacBRIDE,* District Judge.

FARRIS, Circuit Judge:

The International Association of Machinists and Aerospace Workers (IAM) and co-defendants appeal the district court's order awarding back pay, other lost benefits and attorney fees to plaintiff Higgins. Higgins cross-appeals seeking additional attorney fees and general damages for emotional distress.

## FACTS

Until June 7, 1977, Higgins was employed as a union organizer for the Machinists Trade District Lodge 190 (District Lodge),

---

\* Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation.

an affiliate of the IAM. Floyd Smith was International President of the IAM until June 30, 1977. Robert Simpson was at all times Vice President of the IAM. Richard Harden was employed by the IAM as a Grand Lodge Representative.

On March 14, 1977, Simpson sent a mailgram to President Smith, suggesting that District Lodge 190 be placed under the "supervision" of the IAM because the IAM did not agree with bargaining strategy adopted by Bud Williams, the directing Business Representative for the District Lodge. On March 22, Smith sent a letter to the officers of the District Lodge, informing them that (1) the IAM was exercising "supervision, direction and control" over the District Lodge, pursuant to Article VI, section 7 of the IAM constitution, (2) Vice President Simpson would represent the IAM in connection with this supervision, and (3) Representative Harden would be Simpson's deputy-in-charge.

The next day, internal union charges were filed against Bud Williams. On March 27, 1977, Williams applied for disability retirement from the union. The record suggests that Williams' resignation was the result of political pressure created by Harden, who effectively usurped Williams' authority. On June 7, Higgins was told by Harden that he was being terminated as an organizer for the District Lodge. On June 28, a hearing was held before the Executive Board of the District Lodge concerning Higgins' termination. At the hearing, Higgins was told that he was fired because he was "unproductive."

Higgins instituted this action under applicable sections of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401–531 (1976 & Supp. III 1979), alleging that the IAM imposed an unlawful trusteeship upon the District Lodge, that

Harden was therefore without authority to discharge Higgins, and that Higgins was terminated in retaliation for his political support of Bud Williams. The district court held that the supervision imposed by the IAM was a trusteeship and that the IAM had failed to comply with the LMRDA's procedural requirements for imposition of a trusteeship. As a consequence, Harden was without authority to fire Higgins. The court also held that terminating Higgins because he was unproductive was a "pretext," as all evidence establishing Higgins' alleged unproductivity was considered by Harden after Higgins' termination. The court awarded Higgins back pay, other lost benefits and reasonable attorney fees.

## ISSUE I

Did the IAM impose a trusteeship over the District Lodge?

29 U.S.C. § 402(h) (1976) defines a trusteeship as any "method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body." 29 U.S.C. § 462 (1976) establishes the legitimate grounds for the imposition of a trusteeship, which generally assure the legitimate objects of the labor organization. The function of these provisions is to prevent the abuses historically associated with trusteeships. *Benda v. IAM*, 584 F.2d 308, 312 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

Here, the IAM exercised its supervision of the District Lodge pursuant to article VI, section 7, of the IAM Constitution which allows supervision only upon a determination that "the good and welfare of the [IAM] or the membership is placed in jeopardy." [1] This provision's scope is co-extensive with that of the separate IAM constitutional provision authorizing a "trustee-

1. Article VI, Section 7, of the Grand Lodge Constitution provides as follows:
   "*Supervision of Locals and District Lodges, Councils and Conferences.*
   Sec. 7. The I.P. shall have the general supervision, direction and control of all L.Ls., D.Ls., councils and conferences, and the officers thereof.

   The I.P. shall have authority to place under his direct supervision, direction and control and L.L., D.L., counsel or conference when he determines that the good and welfare of this Association or the membership is placed in jeopardy, pending and following approval of the E.C." (Defendants' Exhibit 1, p. 23).

ship." [2] To allow the IAM to exercise "supervision" over the District Lodge without being subject to the constraints imposed by the LMRDA on trusteeships would permit the IAM to abusively usurp the legitimate authority of the District Lodge.

The record establishes that Harden, acting for the IAM, terminated Williams' authority to participate in collective bargaining and review and approve expense accounts, and countermanded Williams' order regarding the reassignment of a business representative. By doing so, the IAM suspended Williams' authority that was created exclusively by the District Lodge's constitution. The district court did not err in concluding that the "supervision" imposed by the IAM was a trusteeship.

## ISSUE II

Was the trusteeship valid?

29 U.S.C. § 462 (1976) requires that trusteeships be imposed in accordance with the constitution and by-laws of the subordinating body, here the IAM. 29 U.S.C. § 464(c) (1976) provides that any trusteeship that is imposed in compliance with the subordinating body's constitution and is authorized after a fair hearing before an executive board is presumed valid for 18 months. We have interpreted this section to permit a trusteeship to be imposed prior to a hearing where emergency conditions exist. *Hotel & Restaurant Employees International Union v. Rollison,* 615 F.2d 788, 792 (9th Cir. 1980); *Retail Clerks Local 770 v. Retail Clerks International Association,* 479 F.2d 54, 55 (9th Cir. 1973).

Article VI, section 7 of the IAM constitution provides that "supervision" can be imposed on a District Lodge "pending and following approval [of the supervision] of the District Lodge's Executive Council." Article VI, section 9, provides that a trusteeship can be imposed only "with the permission and consent of the officers or members at a preliminary hearing not less than 4 days and not more than one week after such . . . trusteeship."

The record establishes that the District Lodge's executive council never convened formally to approve of the supervision. No preliminary hearing occurred between March 26 and March 29 concerning approval of the trusteeship. Even if the hearing concerning plaintiff's termination constituted a "preliminary hearing" for approval of the trusteeship, the hearing did not take

---

**2.** Article VI, Section 8, of the Grand Lodge Constitution provides as follows:

"*Purposes for Which a Suspension or Trusteeship May Be Established.*

Sec. 8. A suspension or trusteeship of a L.L., D.L., council or conference and/or its officers and/or members may be imposed whenever the I.P. determines that the L.L., D.L., council or conference:

(1) is violating the Constitution, the laws, policies, rules and regulations of the G.L., or the bylaws of such L.L., D.L., council or conference approved by him or the E.C.; (2) is endangering the good and welfare of the organization or the membership; (3) is advocating or encouraging dual unionism or abdication from this union or advocating or encouraging communism or any other form of totalitarianism; (4) is or has engaged in malfeasance, misfeasance or nonfeasance in office; or (5) the I.P. has reason to believe: (a) that corruption or financial malpractice exists; (b) that the officers and/or members are not performing their duties or obligations required by their collective bargaining representative; (6) such suspension or trusteeship is necessary to restore democratic procedures or otherwise carry out the legitimate objects or objectives of this Union; or (7) is otherwise engaging in activities which tend to or may endanger the good and welfare of the G.L., the L.L., D.L., council or conference as institution." (Defendants' Exhibit 1, p. 24).

Article VI, Section 9, of the Grand Lodge Constitution provides as follows:

"*Suspension of Local Lodges, District Lodges, Councils and Conferences, Their Officers and Representatives.*

Sec. 9. Whenever the I.P. determines that an emergency exists with respect to any of the provisions stated in Sec. 8 of this Art., and which endanger the good and welfare of the membership, he shall have the authority to suspend the officers and/or members of the L.L., D.L., council or conference with the permission and consent of the officers or members at a preliminary hearing not less than 4 days and not more than one week after such suspension or trusteeship to show cause why such suspension or trusteeship shall not be continued pending the filing of charges, and a trial as provided in Art. L, and the final disposition thereof.

place within the time frame mandated by the IAM constitution. Additionally, there were no emergency conditions which might warrant, in an unusual case, the hearing taking place after the imposition of the trusteeship. *Rollison,* 615 F.2d at 792. Under any characterization of the control asserted by the IAM over the District Lodge, IAM failed to comply with its own constitutional provisions. This renders the trusteeship invalid.

## ISSUE III

Did the district court hold that IAM improperly disciplined Higgins by discharging him?

The only basis for this construction by the IAM of the district court's opinion is the court's conclusion that Higgins was fired under the "pretext" of being unproductive. Reliance on this language is misplaced. The district court held that IAM failed to comply with the procedural requirements of the LMRDA, thereby rendering the trusteeship invalid. This conclusion was not predicated on the disciplinary rules of the LMRDA. This issue is therefore irrelevant on appeal.

## ISSUE IV

Is the district court's award of attorney fees proper?

■ Attorney fees may be awarded to a prevailing party under the LMRDA, if the party establishes that either (1) the defendant acted in bad faith or (2) the plaintiff's action conferred a substantial benefit on the other members of the union. *Hall v. Cole,* 412 U.S. 1, 14, 93 S.Ct. 1943, 1950, 36 L.Ed.2d 702 (1972); *Bise v. IBEW,* 618 F.2d 1299, 1306 (9th Cir. 1979), *cert. denied,* —— U.S. ——, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70–71 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

■ Here, the district court awarded attorney fees to Higgins without commenting on the basis for such an award. A finding for either criteria is substantiated in the record. The district court's conclusion that Higgins was fired under a "pretext" indicates that the IAM was acting in bad faith in both imposing the trusteeship and terminating Higgins. Similarly, Higgins' action here conferred benefit to the District Lodge to the extent it returned autonomy to the District Lodge by rendering invalid all consequences of the trusteeship. *Cf. McDonald v. Oliver,* 525 F.2d 1217, 1227–28 (5th Cir.) (attorney fees awarded where court dissolved improperly imposed trusteeship), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

In his cross-appeal, Higgins asks for additional attorney fees, on the grounds that actual fees amounted to $5,837.50, whereas the district court awarded $4,500.00.

■ The amount of attorney fees awarded is within the sound discretion of the district court and will not be disturbed absent an abuse of discretion. *Bise,* 618 F.2d at 1306; *Ross v. IBEW,* 544 F.2d 1022, 1025 (9th Cir. 1976). The pertinent factors to be considered in determining the size of the award are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70.

■ The district court's opinion failed to supply the requisite information in support of its award. In *Kerr,* we held that the district court's failure to supply this information prevented "meaningful" review of the court's action, thereby mandating the case's remand to the district court. *Id.*

While we do not compel an increase in attorney fees, we remand the question, with directions that the court explicitly substantiate its award, as required by *Kerr.*

We deny the request for attorney fees on appeal. *See Bradford v. Textile Workers of America, AFL–CIO, Local 1093*, 563 F.2d 1138 (4th Cir. 1977).

## ISSUE V

Is Higgins entitled to compensatory damages for emotional anguish?

Higgins contends in his cross-appeal that the district court erred in failing to award damages for his severe mental and emotional anguish.

▆ Higgins' contention fails for two reasons. First, the pretrial order issued by the district court made no mention of general damages for the appellee's emotional distress. This order controls the subsequent course of the action unless modified to prevent manifest injustice. Although the district court's findings could have effected a de facto amendment of the order, *Interstate Plywood Sales Co. v. Interstate Container Corp.*, 331 F.2d 449 (9th Cir. 1964), no such amendment occurred. Second, we have held that emotional distress, standing alone, is an insufficient basis for the award of damages under the LMRDA. *Bise v. IBEW*, 618 F.2d 1299, 1305 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *Ross v. IBEW*, 544 F.2d 1022, 1025 (9th Cir. 1976); *International Brotherhood of Boilermakers v. Rafferty*, 348 F.2d 307, 315 (9th Cir. 1965). Since there is no allegation of personal injury other than emotional distress, the district court properly denied relief.

## ISSUE VI

Should Higgins' back pay award be reduced by the amount of unemployment compensation he received?

▆ This circuit has not confronted this precise issue. The IAM relies upon cases allowing the reduction of an award by the amount of unemployment compensation received where the suit was brought for un-

lawful discharge under either Title VII or the Age Discrimination in Employment Act. *See e. g., EEOC v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579, 591–92 (2d Cir. 1976) (Title VII), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 844 (W.D.Okl.1976) (ADEA). It also notes, however, that the Supreme Court has held that the NLRB need not deduct unemployment compensation from back pay awards which are made under the NLRA to discriminatorily discharged employees, where the unemployment compensation came from a state agency. In so ruling, the Court referred to payments made by a state agency out of funds derived from taxation as being collateral payments, not made directly from the employer. *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951).

We have carefully reviewed these decisions. While the employer here pays what is in effect an insurance premium to cover the award of unemployment compensation, the sum paid to the unemployed worker exceeds the premium paid by the employer. Whether the payments to Higgins were direct and not collateral because unemployment insurance benefits in California are "based solely upon employer contributions" is a question of fact under the circumstances here. The ruling of the district court must be affirmed unless it is clearly erroneous. The IAM did not show that the unemployment compensation was a direct benefit deductible from the back pay award. Neither has it demonstrated to us that the district court clearly erred in finding the compensation to be a non-deductible collateral source.

Affirmed in part, reversed in part, and remanded.