**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Plaintiffs,**

v.

**LOCAL LODGE D461 OF CEMENT, LIME, GYPSUM AND ALLIED WORKERS DIVISION OF INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Defendants.**

Civ. A. No. 87–95–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

July 6, 1987.

Denmark Groover, Jr., Macon, Ga., Robert H. Stropp, Jr., Birmingham, Ala., J.R. Goldthwaite, Jr., Atlanta, Ga., for plaintiffs.

William Wallen, Philadelphia, Pa., Thomas F. Jarriel, Macon, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

Plaintiff, International Brotherhood of Boilermakers, has brought action against Local Lodge D461 as well as its officers ("Local D461"), pursuant to 29 U.S.C.A. § 185 (West 1978), to enforce a trusteeship on Local D461. The plaintiff also filed a motion for preliminary injunction. The Independent Workers of North America (IWNA) then petitioned to intervene and were so allowed by the court. In response to the motion for injunction, the court held an evidentiary hearing on June 15, 1987.

The parties, at the evidentiary hearing, agreed that there is not much dispute concerning the relevant factual issues. Local D461 was formerly chartered by and affiliated with the Cement, Lime, Gypsum and Allied Workers International Union which merged on or about April 1, 1984, with the plaintiff International Brotherhood of Boilermakers (Boilermakers). Pursuant to the merger agreement between plaintiff and the Cement, Lime, Gypsum and Allied Workers International Union, the constitution of the plaintiff Boilermakers was agreed to the supreme law of the merged organization. Local D461 then became obligated to uphold this constitution. (Plaintiff's Exhibit 4).

In accordance with said constitution, Local D461 was required to transfer to the plaintiff a certain portion of each member's monthly dues called per capita tax. (Plaintiff's Exhibit 1, pp. 47–49). From approximately August, 1986, until June, 1987, Local D461 failed to remit these required sums to the plaintiff. (T. p. 33). In November of 1986, Local D461 began diverting these same funds to the IWNA, a group that is in competition with plaintiff for the representation of labor union locals. (T. p. 52). Also in November of 1986, a vote was taken within Local D461 that purported to disaffiliate with the plaintiff Boilermakers. No official notice of this meeting was ever given to plaintiff. (T. 56–57; Defendant's Exhibit 2).

Sometime in March or April of 1987, representatives of the plaintiff Boilermakers discovered that Local D461 had been transferring funds to the IWNA. The plaintiff then, pursuant to the constitution, sought to impose a trusteeship upon Local D461 and sought to remove or suspend certain individuals within Local D461 from their offices. After receiving adequate notice of the imposition of the trusteeship, the representatives of Local D461 failed to attend the hearing held on the trusteeship. Since that time, Local D461 has failed to comply

or otherwise cooperate with the trusteeship.

On April 23 and 24, 1987, the National Labor Relations Board (NLRB) conducted a representation election for the members of Local D461. The voters cast their choices as follows:

| | |
|---|---|
| IWNA | 647 |
| Boilermakers | 22 |
| No Union | 21 |

On May 4, 1987, the NLRB certified the IWNA as the collective representative of the members of Local D461, thus ending the representation of the plaintiff Boilermakers.

### Conclusions of Law

The plaintiff seeks to enjoin the defendants from dissipating the assets, books, records, and properties of Local D461 and from refusing to cooperate with the trusteeship imposed under the constitution.

29 U.S.C.A. § 462 (West 1985) provides

[t]rusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

For a trusteeship to be validly established pursuant to this section, three prerequisites must be shown. First, the imposition of the trusteeship must be in accordance with the union's constitution and bylaws. Second, there must be a fair hearing. Finally, the trusteeship must have been installed for a permissable purpose. *See Higgins v. Harden,* 644 F.2d 1348, 1351 (9th Cir.1981); *Hotel & Restaurant Employees and Bartenders International Union v. Rollison,* 615 F.2d 788, 792 (9th Cir.1980); *Gauber v. Woodcock,* 520 F.2d 1084, 1093 (8th Cir.

1975); *Jolly v. Gorman,* 428 F.2d 960, 965 (5th Cir.1970).

Article XVIII, Section 1, of the Boilermaker's constitution provides in relevant part as follows concerning the imposition of a trusteeship:

[t]he Executive Council shall have authority to place any subordinate body under trusteeship if it is satisfied after notice and hearing that a trusteeship is warranted and the interests of the International Brotherhood so require.... The subordinate body involved shall be given at least ten (10) days written notice of such trusteeship hearing. Interested officers and members, including representatives of the International Brotherhood, may appear at such hearing to present evidence as to why a trusteeship should or should not be imposed. Grounds for the imposition of trusteeships shall include: secession or threatened secession; dissolution or threatened dissolution; *disipation or loss of funds or assets or financial malpractice* or corruption or threat thereof; violation or threatened violation of collective bargaining agreements; the deprivation of democratic procedures and other activities constituting a violation of this Constitution and threatening the welfare of the subordinate body membership or the International Brotherhood. If upon the evidence introduced at the trusteeship hearing and all the circumstances the Executive Council is satisfied that a trusteeship is required, it may impose a trusteeship for such period as it deems reasonably necessary, and place a trustee appointed by the International President in charge of the activities of the subordinate body.

(Plaintiff's Exhibit 2) (emphasis added). Section 2, concerning the administration of the trusteeship, provides in relevant part as follows:

[s]uch trustee shall have the right, upon demand, to all the funds, properties, books and assets of the trusteed body for the period that he is in charge. Such properties shall be held in trust for the benefit of the subordinate body and expended only to the extent necessary for the proper conduct of the affairs of

the subordinate body.... The trustee so appointed shall be authorized and empowered to remove any or all officers and appoint temporary officers for the duration of his trusteeship and to remove or replace other representatives or employees of such trusteed body, and to take such other actions as in his judgment are necessary for the preservation of the subordinate body and its assets, all subject to the direction, instructions and approval of the International President.

(Plaintiff's Exhibit 2).

The trusteeship in the case at bar was instituted on April 13, 1987, and after notice was given, a hearing was held on April 28, 1987. The transfer of per capita tax to the IWNA justified the imposition of the trusteeship pursuant to the constitution. The hearing was conducted in a timely manner. The plaintiff fully complied with the requirements of its constitution in imposing the trusteeship on Local D461.

■ The next requirement is a showing that the hearing conducted was a fair one. The minimum requirements for a fair hearing are notice of the charges, presentation of evidence and witnesses, and opportunity given for cross-examination. *Jolly,* 428 F.2d at 968. Notice of the trusteeship hearing was given in writing to all the members of Local D461 on April 14, 1987. This notice included the date of the hearing, the charges against the local, and the factual basis in support. (Plaintiff's Exhibit 9). Furthermore, an even more detailed hearing notice letter was sent to Local D461's president, recording secretary, and financial secretary on April 15, 1987. (Plaintiff's Exhibit 10). A hearing was duly conducted on April 28, 1987, and a transcript of the proceedings was made. (Plaintiff's Exhibit 11). Even though the defendants chose not to attend this hearing, the court's examination of the entire transcript shows that the plaintiff produced adequate evidence to show cause for the trusteeship, and allowed the defendants an adequate opportunity to rebut, if they had so desired. The court finds that all the elements of a fair hearing were satisfied.

■ The final condition of trusteeship concerns the purpose for its imposition. Both the constitution and section 462 allow the institution of a trusteeship for the correction of financial malpractice. Defendants admit that beginning in August of 1986 they ceased sending the monthly per capita tax to plaintiff as required by the constitution. (T. p. 73). Further, from November, 1986, until the NLRB approval of IWNA as the bargaining representative of Local D461, the defendants agree that they sent the withheld tax to the IWNA. This amount being approximately $42,000.00. (T. pp. 75–77). It is clear to this court that the retention and transference of these funds violated the provisions of the constitution, to which the defendants agreed to be bound pursuant to the merger agreement. Such actions certainly amounted to financial malpractice. Therefore, the trusteeship was imposed for a valid purpose.

■ Pursuant to 29 U.S.C.A. § 464 (West 1985), once a trusteeship established by a labor organization is shown to be in conformity with the requirements of its constitution and was satisfied after a fair hearing, the trusteeship is presumed to be valid for a period of eighteen months from the date of its imposition.

The court's analysis does not end at this point. The requirements of a preliminary injunction must be addressed. To be entitled to preliminary injunctive relief, the movant must prove four elements: (1) there is substantial likelihood that the movant will prevail on the merits; (2) the movant will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984).

■ The plaintiff has clearly shown to this court that it has a substantial likelihood of success on the merits. Article V, Section 6, of the constitution provides:

Upon issuance of [a] Charter, [each] Local Lodge shall, subject to other appli-

cable provisions of this Constitution ...,
continue in existence while ten (10) or
more of its members are employed under
the jurisdiction of the International
Brotherhood, subject to the approval of
the Executive Council. If *ten (10) or
more members maintain membership*
in such Local Lodge and otherwise com-
ply with the provisions of this Constitu-
tion, *all books, records, properties,
funds and assets (including trusts,
trust funds or other trust properties
held, operated or controlled by such
Local Lodge) owned or held by such
Local Lodge shall remain the property
of such Local Lodge so long as the
Charter is maintained.*

Any Local Lodge having *less than ten
(10) active members* shall be automati-
cally disbanded and its Charter returned
to the International Brotherhood, *togeth-
er with all books, record, properties,
funds and assets (including trusts,
trust funds or other trust properties
held, operated or controlled by such
Local Lodge) owned or held by such
Local Lodge at the time of such dis-
banding, which shall become the prop-
erty of the International Brotherhood.*

The plaintiffs ultimately seek, under this
provision, to retain Local D461's assets.
Local D461 agreed to this forfeiture provi-
sion by virtue of being a party to the
merger agreement. The plaintiff has
shown that it has a substantial likelihood of
success on the merits.

Undoubtedly, the plaintiff will be irrepa-
rably injured if the defendants were to
dissipate Local D461's assets. The harm to
plaintiffs, if the injunction does not issue,
outweighs any harm to the defendants.
The defendants agreed to all of the provi-
sions at issue here. An injunction will give
the trustee no greater authority than that
conferred in the constitution. Upholding
such contractual provisions does not, in this
court's opinion, violate any public interest.

It is, therefore, ORDERED that defend-
ant members of Local D461 are to desist
from interferring with the trusteeship. Lo-
cal D461 is hereby ORDERED to turn over
to the trustee within ten days all funds,

books, assets, and properties of D461 that
were in existence prior to the NLRB's rep-
resentation election conducted on April 23–
24, 1987. The $41,667.00 that Local D461
turned over to the registry of the court
after the evidentiary hearing will remain
with the court until the ultimate merits of
this case are decided or until further order
by the court.

The trustee is ORDERED to administer
the trusteeship in accordance with the In-
ternational constitution.

The IWNA, intervenor, is ORDERED to
turn over to the registry of the court $42,-
000.00 representing per capita tax sent to
the IWNA from November, 1986, to April,
1987. This sum will be retained by the
court until the merits of this matter are
reached or by further order of the court.