865 F.2d 1228
 130 L.R.R.M. (BNA) 2673, 57 USLW 2551,
111 Lab.Cas. P 10,949
 INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al.,
Plaintiffs-Appellees,
v.
LOCAL LODGE D238 OF THE CEMENT, LIME, GYPSUM AND ALLIED
WORKERS DIVISION OF THE INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, et al., Defendants,
George Smith, Jr., individually and as President of Local
Lodge D238; Larry Burden, individually and as Recording
Secretary of Local Lodge D238; Charlie C. Hill, III,
individually and as Financial Secretary of Local Lodge D238;
and Independent Workers of North America, an unincorporated
association, Defendants-Appellants.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al.,
v.
LOCAL LODGE D237 OF THE CEMENT, LIME, GYPSUM AND ALLIED
WORKERS DIVISION OF THE INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, et al., Defendants,
Walter Rickerson, individually and as President of Local
Lodge D237; Joe Stuckey, individually and as Recording
Secretary of Local Lodge D237; John Williams, individually
and as Financial Secretary of Local Lodge D237; and
Independent Workers of North America, an unincorporated
association, Defendants-Appellants.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al.,
Plaintiffs-Appellees,
v.
LOCAL LODGE D233 OF THE CEMENT, LIME, GYPSUM AND ALLIED
WORKERS DIVISION OF THE INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, et al., Defendants,
Walter Davis, individually and as President of Local Lodge
D233; Billy Moore, individually and as Recording Secretary
of Local Lodge D233; Donny A. Yaun, individually and as
Financial Secretary of Local Lodge D233; Independent
Workers of North America, an unincorporated association,
Defendants-Appellants.
 No. 88-8150.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 16, 1989.
Rehearing and Rehearing In Banc Denied March 22, 1989.
 
 Thomas F. Jarriel, Meranze and Katz, Macon, Ga., for defendants-appellants.
 Bernard N. Katz, Lynne P. Fox, Meranze and Katz, Philadelphia, Pa., for Local Lodge D233, 237 & 238 and individual officers.
 Robert H. Stropp, Jr., Stropp and Nakamura, Patrick K. Nakamura, Birmingham, Ala., Denmark Groover, Jr., Macon, Ga., J. Michael Walls, Walls and Corlew, Atlanta, Ga., for Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, Doug Keefeler and J.C. Todd as Intern. Trustees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before JOHNSON, HATCHETT and COX, Circuit Judges.
 HATCHETT, Circuit Judge.
 
 
 1
 The Independent Workers of North America (IWNA) and Local Lodges D233, D237, and D238 (Local Lodges) seek review of the district court's grant of a preliminary injunction to the International Brotherhood of Boilermakers (International Union). The district court enjoined the Local Lodges, certain officers, and the IWNA from interfering with trusteeships which the International Union had imposed on the Local Lodges' assets. 678 F.Supp. 1575. We affirm.
 
 FACTS
 
 2
 The International Union and the IWNA compete for local unions' affiliation, and this controversy arose from their competition. Until April 1, 1984, the Local Lodges affiliated with the Cement, Lime, Gypsum and Allied Workers International Union (Allied). On April 1, 1984, Allied merged into the International Union under an agreement which established the International Union's constitution as the merged organization's supreme law. As a result, the Local Lodges became the International Union's affiliates, obligated to follow its constitution.
 
 
 3
 In August, 1986, the International Union held a constitutional convention. At this convention, the delegates reaffirmed the merger between the International Union and Allied. In addition, the delegates elected the Allied division's vice president to the International Union. This election created dissention among several of the Local Lodges which affiliated with the International Union under the Allied merger.
 
 
 4
 The disputed election and other alleged invasions of the Local Lodges' autonomy caused some members of the dissatisfied Local Lodges to vote for disaffiliation from the International Union.[1] Following these disaffiliation votes, the Local Lodges formed the IWNA to function as the Local Lodges' new collective bargaining agent. The Local Lodges' members' employer subsequently recognized the IWNA as the members' International Union. The disaffiliations' validity and the propriety of the employer's recognition of the IWNA as the Local Lodges' collective bargaining agent are currently pending before the National Labor Relations Board (NLRB).[2]
 
 
 5
 Although the parties dispute the disaffiliations' validity and effective date, the Local Lodges undisputedly ceased paying per capita taxes to the International Union prior to the disaffiliation votes. These taxes constitute a percentage of each Local Lodge member's dues. The Local Lodges allegedly owe the following amounts: Local Lodge D233 owes $15,000, Local Lodge D237 owes $21,000, and Local Lodge D238 owes approximately $4,700. Instead of paying the International Union, the Local Lodges have paid substantial sums to the IWNA: Local Lodge D233 paid $20,000, Local Lodge D237 paid $19,000, and Local Lodge D238 paid $1,892.
 
 
 6
 On April 14, 1987, the International Union imposed an emergency trusteeship upon Local Lodge D233, asserting the following reasons for such action: (1) certain Local Lodges' officers promoted disaffiliation and secession; (2) certain officers' breach of their oaths of office; and (3) financial malpractice, consisting of failing to pay the required taxes and transferring funds to the IWNA.[3] To ratify the emergency trusteeship, the International Union held a hearing on April 29, 1987. Prior to the hearing, the International Union notified Local Lodge D233's members of the hearing's date, location, and time. The International Union additionally informed Local Lodge D233's officers of their right to attend the hearing and present evidence against the trusteeship's imposition; however, they failed to attend the hearing. The International Union's Executive Council ratified the trusteeship after finding financial malpractice and activities promoting disaffiliation and secession. The International Union informed Local Lodge D233's officers of the trusteeship's ratification.
 
 
 7
 The International Union imposed trusteeships upon Local Lodges D237 and D238 in June, 1987, after the Lodges' officers refused to consent to a properly requested audit. Again, the International Union notified the Local Lodges' officers and members of the trusteeship hearing and requested the officers' presence. After the hearings, the Executive Council ratified the trusteeship upon Local Lodges D237 and D238 for the following reasons: (1) certain officers and members of the Local Lodges promoted dual unionism and disaffiliation; (2) certain officers of the Lodge Lodges committed financial malpractice by failing to pay the required taxes and failing to submit to an audit of the Lodges' records, and (3) certain officers and members maintained ties with the IWNA, creating a conflict of interest which interfered with the Local Lodges' ability to perform collective bargaining responsibilities.PROCEDURAL HISTORY
 
 
 8
 The International Union moved the district court for a preliminary injunction to prohibit the Local Lodges' officers and the IWNA from interfering with the trusteeships. On October 6, 1987, after holding an evidentiary hearing, the district court granted the preliminary injunction. In addition, the district court ordered the Local Lodges to transfer all funds, books, assets, and properties to the trustees. The district court also ordered the Local Lodges to pay $40,892, the amount of taxes allegedly owed to the International Union, into the court's registry until the court decided the merits of the case.
 
 
 9
 The district court rejected the Local Lodges' arguments that it lacked jurisdiction to assist in the trusteeships' enforcement. The court concluded that the NLRB unfair labor practice proceeding did not preempt its jurisdiction because it would not decide the issues pending before the NLRB. Similarly, the district court held that the Norris-LaGuardia Act did not divest its jurisdiction because the International Union imposed the trusteeships for a permissible purpose under the Labor-Management Reporting and Disclosure Act (LMRDA).
 
 
 10
 After concluding that it had jurisdiction to order the requested relief, the district court found that the International Union validly imposed the trusteeships and satisfied its burden of proving the four elements for a preliminary injunction. The district court concluded that the International Union would likely prevail on the merits because it presented substantial evidence of the Local Lodges' financial malpractice. The district court also concluded that the injunction would not irreparably harm the Local Lodges because the trustee holds the property and assets in trust, preventing any dissipation. In contrast, the district court found that without an injunction, the Local Lodges could dispose of such assets and the Lodges' financial records. Finally, the district court concluded that the injunction did not harm the public interest, but rather served it by furthering the stability of labor organizations.
 
 CONTENTIONS
 
 11
 The Local Lodges challenge both the district court's power to order the injunction and its decision to grant the injunction. The Local Lodges contend that the district court did not have jurisdiction to issue the injunctive relief for two reasons. First, they contend that the Norris-LaGuardia Act precludes the court from ordering the injunction because the controversy does not constitute an arbitrable dispute. Second, they contend that the NLRB proceeding preempts the court's jurisdiction because the court necessarily decided the issues pending before the NLRB.
 
 
 12
 Even if the district court had jurisdiction, the Local Lodges contend that the court improperly granted the injunction. They contend that the district court cannot enforce the trusteeships because the International Union did not validly impose the trusteeships. Furthermore, the Local Lodges contend that the International Union failed to satisfy two necessary elements for a preliminary injunction. First, the International Union did not demonstrate a likelihood of success on the merits. Second, they contend that injunction injures the public interest by decreasing the stability of labor organizations.
 
 
 13
 The International Union contends that the district court properly granted the preliminary injunction. According to the International Union, neither the NLRB proceeding nor the Norris-LaGuardia Act preempted the district court from issuing the injunctive relief.
 
 
 14
 On the merits of the district court's decision, the International Union contends that the district court properly found that the International Union satisfied the four elements for a preliminary injunction. Contrary to the Local Lodges' assertions, the International Union contends that it will likely succeed on the merits because the undisputed evidence reveals the Local Lodges' financial malpractice. Finally, the International Union contends that the preliminary injunction serves the public interest of increasing labor organizations' stability.ISSUES
 
 
 15
 The Local Lodges raise the following issues on appeal: (1) Whether the NLRB's unfair labor practice proceeding preempts the district court's jurisdiction; (2) whether the Norris-LaGuardia Act prohibits the district court from enjoining interference with the trusteeships; and (3) whether the district court abused its discretion in granting the preliminary injunction.
 
 DISCUSSION
 
 16
 I. The NLRB Unfair Labor Practice Proceeding
 
 
 17
 The Local Lodges contend that sections 7 and 8 of the National Labor Relations Act (NLRA) preempt this court's jurisdiction because the NLRB has a pending action which will determine the controlling facts. In contrast, the International Union contends that the pending NLRB proceeding does not preempt the district court's jurisdiction because the district court can enforce the trusteeships without deciding issues before the NLRB. The district court found that the NLRB proceeding would not preempt its jurisdiction, because it would not decide the issues before the NLRB.
 
 
 18
 We agree with the district court's conclusion. Unfair labor practice proceedings do not absolutely preclude a district court from considering the same issues. See Benda v. Grand Lodge of Int'l. Assoc. of Machinists, 584 F.2d 308, 313 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979) (unfair labor practice charge pending before NLRB does not preempt an action under the LMRDA's trusteeship provisions); see also McDonald v. Oliver, 525 F.2d 1217, 1230 n. 6 (5th Cir.), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976) ("an individual may sue to redress a violation of a collective bargaining agreement even though the violation itself may constitute an unfair labor practice.").
 
 
 19
 Moreover, the district court properly concluded that its trusteeship decision does not require adjudication of the unfair labor charges. See Benda, 584 F.2d at 314 (court should avoid ruling on an unfair labor practice charge's merits where it need not decide such issue to make a trusteeship determination). The NLRB proceeding will determine whether the original collective bargaining agreement precludes the IWNA from becoming the Local Lodges' new collective bargaining agent. In contrast, the district court only needed to determine if the International Union validly imposed the trusteeships and if the Local Lodges engaged in financial malpractice prior to the employer's recognition of the IWNA as the new collective bargaining agent. In making its decision, the district court decided different issues than the NLRB and focused on events occurring prior to the relevant events for the NLRB proceeding. Accordingly, the NLRB proceeding did not preempt the district court's enforcement of the trusteeships.
 
 II. The Norris-LaGuardia Act
 
 20
 The Local Lodges contend that the Norris-LaGuardia Act prohibited the district court from enjoining any interference with the International Union's trusteeships. Contrary to this contention, the district court properly relied on this court's recent decision to conclude that the Norris-LaGuardia Act does not preclude it from entering the injunction because the International Union imposed the trusteeships for an acceptable purpose under the LMRDA. See Int'l Brotherhood of Boilermakers v. Local Lodge D461, 835 F.2d 1439 (11th Cir.1987) (section 104(b) of the Norris-LaGuardia Act is inapplicable where a union imposes a trusteeship for a permissible purpose under the LMRDA).
 
 
 21
 The LMRDA explicitly recognizes financial malpractice as a permissible purpose for imposing a trusteeship. See 29 U.S.C. Sec. 462 (1985) ("trusteeships shall be established and administered ... for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objectives of such labor organization."). The International Union imposed the trusteeships primarily to cease the Lodges' officers' financial malpractice. The failure to pay the required per capita taxes and the diversion of funds to the IWNA constituted financial malpractice. See Int'l Brotherhood of Boilermakers v. Local Lodge 714, 845 F.2d 687, 693 (7th Cir.1988) (financial malpractice includes local officers' embezzlement and diversion of funds to a rival union). Because the International Union imposed the trusteeships for financial malpractice, a permissible purpose under the LMRDA, the Norris-LaGuardia Act does not apply.
 
 
 22
 III. The District Court Properly Granted the Injunction
 
 A. Valid Trusteeships
 
 23
 Prior to providing enforcement for the trusteeship, a valid trusteeship must exist. A union validly imposes a trusteeship by complying with the union's constitutional provisions, imposing the trusteeship for a permissible purpose under the LMRDA, and providing a fair hearing. See 29 U.S.C. Sec. 462 (1985)[4]; see Jolly v. Gorman, 428 F.2d 960, 965 (5th Cir.1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971) (court held that a fair hearing is necessary even though congress did not explicitly require a fair hearing). The International Union satisfied these three requirements. First, as discussed above, the International Union imposed the trusteeships for financial malpractice, an appropriate purpose under the LMRDA. Second, the International Union imposed each trusteeship pursuant to its constitution.[5] The International Union gave ten days written notice to the interested officers and members. The Lodges' officers had the opportunity to present evidence regarding the trusteeships' imposition. In addition, the International Union imposed the trusteeships to counteract the Local Lodges' financial malpractice, a permissible purpose under its constitution. Thus, the International Union scrupulously followed the constitution's guidelines for imposing a trusteeship.
 
 
 24
 The Local Lodges contend that the International Union did not validly impose the trusteeship under its constitution for two reasons. First, the Local Lodges argue that the International Union did not impose the trusteeship on a subordinate body because less than ten members remained active in each of the Local Lodges. See 29 U.S.C. Sec. 462 (1985) (trusteeship can only be imposed on a subordinate body); see Int'l Brotherhood of Boilermakers v. Local Lodge, 714, 845 F.2d 687, 692 (7th Cir.1988) ("the constitution seems to make the [International Union's] right to impose a trusteeship on a local depend on the local's retaining at least ten members."). Section 6 of Art. V of the International Union's constitution provides:
 
 
 25
 Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together with all books, records, properties, funds, and assets (including trusts, trust funds or other trust properties held, operated or controlled by such Local Lodge) owned or held by such Local Lodge at the time of such disbanding, which shall become the property of the International Brotherhood.
 
 
 26
 Thus, if the membership decreases below ten, the local lodge disappears and no entity exists on which to impose a trusteeship. See Local Lodge 714, 845 F.2d at 692. According to the Local Lodges, the disaffiliation vote disbanded the lodges in November 1986, before the International imposed the trusteeships in June, 1987.
 
 
 27
 Contrary to the Local Lodges' argument, they did not disband upon the disaffiliation vote. Rather, the Local Lodges continued to function with more than ten members, but merely attempted to affiliate with a different International Union. The Local Lodges expressly stated in their brief, "[t]he locals have continued their existence at all times with the only change being that of their International affiliation." Local Lodges' Brief at 42. Moreover, the Local Lodges paid substantial sums, representing a percentage of their dues, to the IWNA. These sums approximate the amount of money the Lodges would have paid to the International Union when their memberships far exceeded ten persons. Thus, the International Union presented evidence that the Local Lodges did not disband, and the Local Lodges failed to provide any evidence or testimony that their memberships fell below ten members.
 
 
 28
 Second, the Local Lodges argue that because the merger agreement supercedes the constitution, the International Union must comply with the merger agreement's provisions even though such compliance violates provisions of the International Union's constitution. The Local Lodges accordingly argue that the merger agreement prevents the valid imposition of a trusteeship under the International Union's constitution.
 
 
 29
 Section 2 of Art. XVIII of the International Union's constitution gives the trustee "the right, upon demand, to all funds, properties books and assets of the trusted body...." However, section 3 of Art. V of the merger agreement provides:
 
 
 30
 On the effective date of the merger all property; real, personal, and mixed; and all rights, titles and interest; either legal or equitable; and monies, funds or property; tangible or intangible, of the United Cement Lime, Gypsum and Allied Workers International Union and affiliated District Councils shall, by virtue of the merger, be transferred to and vested in the merged organization in accordance with the Constitution....
 
 
 31
 The Local Lodges argue that Art. V, section 3 of the merger agreement allows each local lodge to retain its treasury, and therefore prohibits the trustee from taking their assets.
 
 
 32
 This court has previously rejected this argument. See Int'l. Brotherhood of Boilermakers v. Local Lodge D111, 858 F.2d 1559 (11th Cir.1988). In Local Lodge D111, this court concluded that Art. XVIII, section 2 of the International Union's constitution simply allowed the Local Lodges to retain their assets upon the merger's consummation. Such clause does not allow the Local Lodges to retain their treasuries after the Local Lodges have disbanded or after the International Union has imposed a trusteeship. Local Lodge D111, at 1561. Thus, this clause does not prohibit the International Union from retaining the local treasuries or placing them in a trusteeship. Therefore, we agree with the district court that the International Union imposed the trusteeships pursuant to its constitution.
 
 
 33
 The International Union satisfied the final element for validly imposing a trusteeship by conducting a fair hearing. A fair hearing has three minimum requirements: (1) notice of the charges, (2) presentation of evidence and witnesses, and (3) an opportunity for cross-examination. See Jolly, 428 F.2d at 968. For each Lodge, the International Union gave written notice of the charges to the Local Lodges. Furthermore, the International Union encouraged the Lodges' members and officers to attend the hearings, providing them with the date, time, and location of the hearings. Although the members and officers did not participate, the International Union provided a sufficient opportunity to participate and cross-examine witnesses. Thus, the district court properly determined that the International Union conducted fair hearings to impose the trusteeships.
 
 
 34
 The satisfaction of these elements makes the International Union's trusteeship presumptively valid. See 29 U.S.C. Sec. 464(c).[6] The Local Lodges can overcome this presumption, however, by demonstrating clear and convincing evidence that the International Union did not impose the trusteeship in good faith. Bailey v. Dixon, 451 F.2d 160, 161 (5th Cir.1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2043, 32 L.Ed.2d 332 (1972). Because the Local Lodges have not presented any evidence that the International Union imposed the trusteeships in bad faith, we conclude that the trusteeships are valid.
 
 
 35
 B. The District Court Did Not Abuse Its Discretion in
 
 Granting the Preliminary Injunction
 
 36
 The Local Lodges contend that the district court improperly granted the preliminary injunction because (1) the International Union did not demonstrate a likelihood of success on the merits, and (2) the preliminary injunction injures the public interest rather than serving it. The district court concluded that the International Union satisfied all four elements necessary for a preliminary injunction. We agree with the district court's analysis and conclusion.
 
 
 37
 The International Union provided clear evidence that the Local Lodges and the defendant officers engaged in financial malpractice by failing to remit certain taxes to the International Union and paying other funds to the IWNA. This financial malpractice constitutes a permissible purpose for imposing a trusteeship under the International Union's constitution and the LMRDA. Moreover, because the above discussion demonstrates that the International Union validly imposed the trusteeships, it will likely succeed on the merits of its claim.
 
 
 38
 As the district court noted, the International Union demonstrated the likelihood of irreparable injury without the injunction. If the district court had failed to grant the injunction, the Local Lodges' officers could have dissipated the assets and confiscated the relevant financial records. Thus, without the injunction, the International Union could have lost a substantial amount of money.
 
 
 39
 To the contrary, granting the injunctive relief did not harm the Local Lodges. Because the trustee must hold the Local Lodges' property in trust, no similar dissipation injury can occur. See 29 U.S.C. Secs. 461-466 (1985). As a result, the threatened injury to the International Union far outweighed any possible damage to the Local Lodges.
 
 
 40
 Finally, we agree with the district court that the preliminary injunction serves the public interest. This case involves the application of the provisions of the International Union's constitution and merger agreement. The Local Lodges agreed to these provisions. The injunction upholds contractual provisions to which the Local Lodges freely agreed; therefore the injunction does not violate any public interest. See Int'l Brotherhood of Boilermakers v. Local Lodge D461, 663 F.Supp. 1031, 1035 (M.D.Ga.) aff'd 835 F.2d 1439 (11th Cir.1987). Enforcing the trusteeships also increases the stability of labor organizations because it discourages international unions from raiding another international union's local affiliates. An increase in labor organizations' stability furthers the public interest. Therefore, we find that the district court did not abuse its discretion in granting a preliminary injunction.
 
 CONCLUSION
 
 41
 Based on the above discussion, we conclude that the district court properly ordered the enforcement of the International Union's trusteeships over the Local Lodges. Neither the NLRA nor the Norris-LaGuardia Act preempted the International Union's request for injunctive relief. Furthermore, we conclude that the district court did not abuse its discretion in granting a preliminary injunction to enforce the International Union's trusteeships imposed on Local Lodges D233, D237, and D238.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Although Lodge D233 had approximately 350 members, it voted to disaffiliate by a vote of 33 to 0; Lodge 237 had approximately 675 members and voted 44 to 0 to disaffiliate; Lodge 238 had 65 members and voted 22 to 0 to disaffiliate
 
 
 [2]
 After the oral argument, the NLRB dismissed the unfair labor practice charges against each local, the IWNA, and the employer
 
 
 [3]
 Section 3 of Art. XVIII of the International Union's constitution provides:
 In any situation where, in the judgment of the International President, grounds for the establishment of a trusteeship exist, or grounds for suspension of a subordinate body officer exist, and in addition the activities of the subordinate body or of its officers or membership are such as to create an emergency imminently threatening the welfare, funds or property of the subordinate body, then he may summarily place a subordinate body in trusteeship, subject to a subsequent hearing by the Executive Counsel as set forth in Section 1 of this Article. Such hearing shall be held within fifteen (15) days after the imposition of such emergency trusteeship. If in his judgment the situation warrants, the International President may at any time within thirty (30) days of the imposition of the emergency trusteeship terminate same. In the event the International President does not terminate the emergency trusteeship within thirty (30) days, the Executive Council as soon as practicable thereafter upon the evidence introduced at the trusteeship hearing and all the circumstances relating thereto shall take action in accordance with Section 1 of this Article.
 
 
 [4]
 Section 462 of the LMRDA provides:
 Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
 29 U.S.C. Sec. 462 (1985).
 
 
 [5]
 Section 1 of Article XVIII of the International Union's constitution reads:
 The Executive Council shall have authority to place any subordinate body under trusteeship if it is satisfied after notice and hearing that a trusteeship is warranted and the interests of the International Brotherhood so require. If it appears that a Trusteeship may be necessary, such hearing shall be conducted as provided for in Article XVII, Section 4(a). The subordinate body involved shall be given at least ten (10) days written notice of such trusteeship hearing. Interested officers and members, including representatives of the International Brotherhood, may appear at such hearing to present evidence as to why a trusteeship should or should not be imposed. Grounds for the imposition of trusteeships shall include: secession or threatened secession; dissolution or threatened dissolution; dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof; violation or threatened violation of collective bargaining agreements; the deprivation of democratic procedures and other activities constituting a violation of this Constitution and threatening the welfare of the subordinate body membership of the International Brotherhood. If upon the evidence introduced at the trusteeship hearing and all the circumstances the Executive Council is satisfied that a trusteeship is required, it may impose a trusteeship for such period as it deems reasonably necessary, and place a trustee appointed by the International President in charge of the activities of the subordinate body.
 
 
 [6]
 Section 464(c) of the LMRDA provides:
 In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing ... before the executive board ... shall be presumed valid....
 29 U.S.C. Sec. 464(c) (1985).