INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Plaintiffs,

v.

LOCAL LODGE D238, et al., Defendants.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Plaintiffs,

v.

LOCAL LODGE D237, et al., Defendants.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al., Plaintiffs,

v.

LOCAL LODGE D233, et al., Defendants.

Civ. A. Nos. 87–230–2–MAC (WDO), 87–231–3–MAC (WDO) and 87–232–1–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Feb. 10, 1988.

Denmark Groover, Macon, Ga., Robert H. Stropp, Birmingham, Ala., and J.R. Goldthwaite, Jr., Atlanta, Ga., for plaintiffs.

Lynne P. Fox, Philadelphia, Pa., and Thomas F. Jarriel, Macon, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

In this consolidated action, plaintiff International Brotherhood of Boilermakers ("Boilermakers") seeks the assistance of the court in enforcing trusteeships imposed upon defendants Local Lodges D233, D237 and D238. Plaintiff further moves this court for a preliminary injunction prohibiting those lodges, certain named officers and defendant Independent Workers of North America ("IWNA") from interfering with the trusteeships. Defendants attack both the jurisdiction of this court and, alternatively, the validity of the trusteeships. To supplement the pleadings submitted by the parties, this court held an evidentiary

hearing on October 6, 1987. The transcript of this hearing is a part of the record and has been read and considered by the court.

## FACTS

Both plaintiff Boilermakers and defendant IWNA are labor organizations, and they are in competition for the loyalty of various local affiliates throughout the country.[1] Prior to April 1, 1984, defendants D233, D237 and D238 were affiliated with the Cement, Lime, Gypsum and Allied Workers International Union ("Allied"). On April 1, 1984, pursuant to a merger agreement, Allied merged into plaintiff Boilermakers. That agreement established the Boilermakers' constitution as the supreme law of the merged organization. Thus, the local lodges which are parties in this case became affiliates of plaintiff Boilermakers and were obliged to abide by the Boilermakers' constitution.

At the Boilermakers' constitutional convention held in August of 1986, delegates to the convention reaffirmed the merger. An election for the position of vice-president-at-large of the Allied division was held. Though both candidates for the post were from this division of the merged organization, all of the delegates present at the convention voted in the election. The outcome of this election created dissension among some of the affiliates.

On November 17, 1986, by a vote of 33–0, Local Lodge D233 voted to disaffiliate from the Boilermakers. Approximately 350 persons were members of D233 at the time of the vote. No notice of this meeting was given to plaintiff by the local's officers. Similar votes under similar circumstances occurred both at Local Lodge D237 on November 25, 1986, and at Local Lodge D238 on December 20, 1986.

Both the validity of these disaffiliations and the effective date of same are in dispute. IWNA purportedly petitioned the National Labor Relations Board ("NLRB") for representation elections at Englehard facilities (employer for members of the lo-

cal lodges), a petition subsequently withdrawn at IWNA's request. On January 29, 1987, an arbitration hearing was held, the results of which were included in a report dated the following day. The arbitrator found IWNA to be the collective bargaining agent for the local lodges which are parties to this action. Plaintiff did not participate in the arbitration proceeding. A letter dated May 6, 1987, purports to establish April 10, 1987, as the effective date of a new collective bargaining agreement entered into by employer Englehard and the locals. The disaffiliation issues and the propriety of the employer's subsequent recognition of IWNA as collective bargaining agent are presently pending before the NLRB in the form of plaintiff's allegations that some or all of the defendants involved in this case and Englehard have engaged in unfair labor practices.

Not disputed is the failure of the three local lodges to remit certain per capita taxes to the parent organization for some undefined period of time prior to the respective disaffiliation votes. These taxes represent a portion of each union member's monthly dues. The local affiliates are in arrears as follows: Local Lodge D233—$15,000.00; Local Lodge D237—$21,000.00; and Local Lodge D238—$4,700.00 (figures are approximate). Depending upon the resolution of both the disaffiliation and the recognition issues, the parties have stipulated that any future liability of the local lodges to plaintiff Boilermakers for per capita taxes will be based upon the following monthly figures: Local Lodge D233—$5,000.00; Local Lodge D237—$10,000.00; Local Lodge D238—$1,977.00.

While failing to remit per capita taxes to plaintiff, the local lodges have paid certain monies to defendant IWNA. The figures that follow indicate the amounts paid to IWNA as of April 10, 1987. Local Lodge D233 has paid $20,000.00. Local Lodge D237 has paid $19,000.00. Local Lodge D238 has paid $1,892.00.

1. This case is similar to one recently considered by this court in the ongoing battle between these two unions. *See International Brotherhood of*

*Boilermakers v. Local Lodge D461,* 663 F.Supp. 1031 (M.D.Ga.1987), *aff'd,* 835 F.2d 1439 (11th Cir.1987).

Pursuant both to the disaffiliation efforts and to the per capita tax dispute, plaintiff Boilermakers imposed trusteeships upon the local lodges. On April 14, 1987, an emergency trusteeship was imposed upon Local Lodge D233 pursuant to Article XVIII, Section 3 of the Constitution. Section 3 reads as follows:

In any situation where, in the judgment of the International President, grounds for the establishment of a trusteeship exist, or grounds for suspension of a subordinate body officer exist, and in addition the activities of the subordinate body or of its officers or membership are such as to create an emergency imminently threatening the welfare, funds or property of the subordinate body, then he may summarily place a subordinate body in trusteeship, subject to a subsequent hearing by the Executive Counsel as set forth in Section 1 of this Article. Such hearing shall be held within fifteen (15) days after the imposition of such emergency trusteeship. If in his judgment the situation warrants, the International President may at any time within thirty (30) days of the imposition of the emergency trusteeship terminate same. In the event the International President does not terminate the emergency trusteeship within thirty (30) days, the Executive Council as soon as practicable thereafter upon the evidence introduced at the trusteeship hearing and all the circumstances relating thereto shall take action in accordance with Section 1 of this Article.

Included among the reasons propounded for the imposition of the trusteeship are: (1) promotion of disaffiliation, secession or dissolution by certain officers; (2) breach by certain officers of their oaths of office; and (3) financial malpractice, including both transfer of funds to IWNA and failure to remit per capita taxes.

Plaintiff notified the members of Local Lodge D233 on April 15, 1987, of the date, location and time for the trusteeship hearing. Plaintiff notified the defendant officers of the local of their right to attend the meeting and of their right to present evidence against the imposition of the trustee-ship. Though the hearing was held on April 29, 1987, the defendant officers did not attend. By letter dated June 4, 1987, plaintiff notified the defendant officers that the imposition of the trusteeship had been ratified by the Boilermakers' Executive Council. The Executive Council found both a pattern of financial malpractice and evidence of disaffiliation or secession activities. As of the date of this order, the defendant officers have failed to turn over to plaintiff's appointed trustee the books, records, property, funds and assets of Local Lodge D233.

The imposition of trusteeships upon Local Lodges D237 and D238 was predicted upon the defendant officers' refusal to consent to an audit of each local lodge's books and records, a request properly made under the Boilermakers' constitution. By letters dated June 15, 1987, plaintiff gave proper notice to both the officers and the members of the two local lodges that a trusteeship hearing would be held in accordance with Article XVIII, Section 1, of the Boilermakers' constitution. That section reads as follows:

The Executive Council shall have authority to place any subordinate body under trusteeship if it is satisfied after notice and hearing that a trusteeship is warranted and the interests of the International Brotherhood so require. If it appears that a trusteeship may be necessary, such hearing shall be conducted as provided for in Article XVII, Section 4(a). The subordinate body involved shall be given at least ten (10) days written notice of such trusteeship hearing. Interested officers and members, including representatives of the International Brotherhood, may appear at such hearing to present evidence as to why a trusteeship should or should not be imposed. Grounds for the imposition of trusteeships shall include: secession or threatened secession; dissolution or threatened dissolution; dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof; violation or threatened violation of collective bargaining agreements; the deprivation of dem-

ocratic procedures and other activities constituting a violation of this Constitution and threatening the welfare of the subordinate body membership or the International Brotherhood. If upon the evidence introduced at the trusteeship hearing and all the circumstances the Executive Council is satisfied that a trusteeship is required, it may impose a trusteeship for such period as it deems reasonably necessary, and place a trustee appointed by the International President in charge of the activities of the subordinate body.

Plaintiff identified several reasons necessitating the trusteeship hearings. Among those identified reasons were the following: (1) promotion of dual unionism; (2) promotion of disaffiliation, dissolution and secession of Local Lodges D237 and D238; (3) breach by certain officers of their fiduciary duties; (4) financial malpractice; (5) failure to comply with international's request for an audit; (6) failure to pay per capita taxes; and (7) conflict of interest due to certain officers' ties with IWNA. By letters dated June 22, 1987, plaintiff Boilermakers again notified the defendant officers of the two local lodges of the hearings and requested those officers' presence.

The hearings were held at the time, date and place scheduled. Following the hearings, the Executive Council of plaintiff Boilermakers made certain findings and transmitted them by letters dated July 31, 1987. The Executive Council found the following: (1) certain officers and/or members of the two local lodges have promoted dual unionism and are maintaining memberships in IWNA; (2) certain officers and/or members have promoted disaffiliation; (3) certain officers and the local lodges have committed financial malpractice by failing to pay per capita taxes, such malpractice evidenced by those officers' refusal to submit reports and permit inspection of the records; and (4) certain officers' and members' ties with IWNA have resulted in a conflict of interest seriously jeopardizing the ability of the local lodges to perform collective bargaining responsibilities.

Pursuant to these findings, plaintiff Boilermakers imposed trusteeships upon both Local Lodge D237 and Local Lodge D238. As of this date, the defendant officers of the two local affiliates have failed to turn over to the appointed trustee the books, records, property, funds and assets of their respective lodges.

## DISCUSSION

*Preemption*

■ Defendants first attack the jurisdiction of this court. They contend that plaintiff's allegations of unfair labor practices brought before the NLRB prior to the filing of the complaint in this action divests this court of its jurisdiction under the "preemption doctrine." *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the State as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board...." *Id.* at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783. Sections 7 and 8 are broad provisions governing "both protected 'concerted activities' and 'unfair labor practices.'" *Id.* at 241, 79 S.Ct. at 777, 3 L.Ed.2d at 780.

Plaintiff correctly points out, however, that it has not asked this court to determine either the disaffiliation issues or the employer recognition issues. Rather, plaintiff has requested the assistance of this court only in enforcing trusteeships imposed upon three recalcitrant local affiliates and in enjoining certain actors from interfering with those trusteeships. Plaintiff contends that the substance of the unfair labor practice allegations need not be addressed by this court.

This court's research indicates that the filing of unfair labor practices does not absolutely preclude a district court from considering the same issues. Local affiliates crying foul often have sued in federal court to attack the validity of trusteeships imposed by parent internationals. "[A]n action brought under the trusteeship provisions of the Labor–Management Report-

ing and Disclosure Act ("LMRDA") is not preempted by an unfair labor practice charge pending before the NLRB...." *Benda v. Grand Lodge of International Association of Machinists*, 584 F.2d 308, 313 (9th Cir.1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); *see also McDonald v. Oliver*, 525 F.2d 1217 (5th Cir.1976), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Quinn v. DiGiulian*, 739 F.2d 637 (D.C.Cir.1984). District courts should avoid, however, directly ruling on the merits of an unfair labor practice, especially where such ruling is unnecessary to the determination of the trusteeship issue. *See Benda*, 584 F.2d at 314. "Such deference will minimize conflicts with the [NLRB] and improve the administration of the labor laws." *Id.*

In determining the validity of the trusteeships and the propriety of injunctive relief in this case, this court need not, and will not, rule upon the issues before the NLRB. Defendants' reliance upon the premption doctrine is misplaced.

*Trusteeships*

■ Plaintiff seeks to enjoin defendants from dissipating the assets, books, records, and properties of Local Lodges D233, D237 and D238 and from refusing to cooperate with the trusteeships imposed under the Boilermakers' constitution. The statutory scheme permitting trusteeships "clearly evidences an expectation that disputes over trusteeships would be litigated with the trusteeship in effect." *National Association of Letter Carriers v. Sombrotto*, 449 F.2d 915, 921 (2nd Cir.1971). Enforcement of trusteeships "by way of preliminary relief not merely does not violate equitable principles but is the resolution most consistent with the legislative scheme here at stake." *Id.*

■ Before determining the propriety of preliminary relief, this court must first determine that the trusteeship has been validly established. 29 U.S.C. § 462 provides as follows:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and by laws of the orga-

nization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

A trusteeship is validly established pursuant to this section if the international shows that the trusteeship was established both in accordance with the provisions of the international's constitution and for a purpose permissible under 29 U.S.C. § 462, and that the trusteeship was authorized or ratified after a fair hearing as required by 29 U.S.C. § 464. *See Higgins v. Harden*, 644 F.2d 1348, 1351 (9th Cir.1981); *Hotel & Restaurant Employees and Bartenders International Union v. Rollison*, 615 F.2d 788, 792 (9th Cir.1980); *Gabauer v. Woodcock*, 520 F.2d 1084, 1093 (8th Cir.1975); *Jolly v. Gorman*, 428 F.2d 960, 965 (5th Cir.1970). Once these elements have been established, the trusteeship is presumptively valid. *See* 29 U.S.C. § 464(c). A local affiliate must overcome this presumption by clear and convincing evidence that the imposition of the trusteeship was not in good faith. *Atlanta Fed. & City Serv. Empl. L.U. 554 v. Service Emp. I.U.*, 411 F.2d 1115, 1116 (5th Cir.1971); *Bailey v. Dixon*, 451 F.2d 160, 161 (5th Cir.1971); *Sombrotto*, 449 F.2d at 921; *Graphic Arts Intern. U. v. Graphic Arts Intern. U.*, 529 F.Supp. 587, 593 (W.D.Mo.1982); *Hansen v. Guyette*, 636 F.Supp. 907, 911 (D.Minn. 1986).

■ Plaintiff Boilermakers imposed trusteeships upon the three local affiliates in this case for a variety of reasons, foremost of which was "financial malpractice." Both the Boilermakers' constitution and the applicable statutes permit the imposition of trusteeships for this reason. The failure to remit to the parent international contractually agreed upon per capita taxes and the diversion of funds to IWNA, two acts common to each local, provide sound factual bases for plaintiff's claim of financial mal-

practice. *See Intern. Broth. of Boiler-makers v. Local Lodge D461*, 663 F.Supp. 1031, 1034 (M.Ga.1987); *see also Graphic Arts Intern. U.*, 529 F.Supp. 594 (in disaffiliation dispute, disbursement of funds to members of local affiliate while continuing to collect but failing to remit to parent organization per capita taxes due constitutes financial malpractice).

Though the manner of imposition upon the locals varied slightly, each trusteeship was imposed in accordance with the provisions of plaintiff's constitution. Plaintiff imposed an emergency trusteeship upon Local Lodge D233, a trusteeship subsequently ratified by the Executive Council of the Boilermakers after a fair hearing.[2] The trusteeships were imposed upon Local Lodges D237 and D238 following hearings instituted by plaintiff in response to certain officers' refusals to permit an audit of the affiliates' books.

The court next examines the nature of the hearing. Not only must the hearing comport with the provisions in the Boilermakers' constitution, but also it must be a "fair hearing" as required by 29 U.S.C. § 464. The minimum requirements for a fair hearing include (1) notice of the charges, (2) presentation of evidence and witnesses, and (3) opportunity for cross-examination. *Jolly*, 428 F.2d at 968.

As described in the Facts, *supra*, each of the trusteeship hearings satisfied the procedural requisites. In each situation, written notices identified either the charges necessitating the hearings or, in the case of Local Lodge D233, the reasons for the imposition of the emergency trusteeship. All of the members of each local affiliate were notified of the date, time and location of the hearings, and both the members and the defendant officers were encouraged to attend and present evidence. The hearings were duly conducted on the date specified, and in each case, evidence was presented supporting the imposition of the trusteeships. Though some officers and individuals chose not to participate, plaintiff provided ample opportunity for their partic-

ipation. Factual findings were made, and the trusteeships were authorized or ratified by plaintiff's Executive Council. Considering these facts and aware of the necessary requirements, this court determines that fair hearings were conducted.

As the above discussion makes clear, plaintiff has established the necessary elements; thus, the trusteeships are presumed valid. Defendants must rebut this presumption with clear and convincing evidence that the trusteeships were not imposed in good faith. Defendants have failed to do so. Instead, defendants have argued that plaintiff may not impose these trusteeships because of the inapplicability of the Boilermakers' constitution to the present situation. Since an argument contending that plaintiff is acting outside the bounds of its constitution could be regarded as an argument alleging bad faith, the court considers defendants' contentions at this juncture.

Defendants contend that where conflicting provisions occur, the Merger Agreement supersedes plaintiff's constitution. Defendants premise this contention upon several portions of the Agreement, including the Introduction, which in relevant part reads as follows:

> The Constitution of the International Brotherhood of Boilermakers ... will be the supreme law of the merged organization. All provisions of this Agreement are binding and those provisions which conflict with the above-referenced Constitution will expire at 12:01 a.m. on the convening date of the Twenty–Eighth Consolidated Convention.[3]

Defendants contend that Article V, Section 3 of the Merger Agreement conflicts with both Article XVIII, Section 2 and Article V, Section 6 of the Boilermakers' constitution. Defendants contend that the provision in the Agreement, which allows that "[e]ach local lodge will retain its local union treasury," supersedes those provisions in the Boilermakers' constitution which require that, upon the disbanding of any local

---

**2.** *See* Discussion *infra.*

**3.** The Twenty Eighth Consolidated Convention was scheduled for 1991.

lodge, that local lodge's Charter shall be returned to the parent international "together with all books, records, properties, funds and assets," which at such time "shall become the property of the International Brotherhood." [4] Upon the imposition of a trusteeship, Article XVIII, Section 2 of plaintiff's constitution gives an authorized trustee "the right, upon demand, to all the funds, properties, books and assets of the trusteed body for the period that he is in charge."

To buttress their contention, defendants point to Article XXXIII, Section 3 of the Merger Agreement, which provides as follows:

On the effective date of the merger all property; real, personal, and mixed; and all rights, titles and interest; either legal or equitable; and monies, funds or property; tangible or intangible, of the United Cement Lime, Gypsum and Allied Workers International Union and affiliated District Councils shall, by virtue of the merger, be transferred to and vested in the merged organization in accordance with the Constitution....

Defendants contend that the conspicuous absence from this provision of any mention of the individual locals [5] and their assets clearly establishes an intent to except in all circumstances a transfer of assets from the locals to the merged organization.

A similar argument was proferred by Local Lodge D111 against the Boilermakers in *International Brotherhood of Boilermakers v. Local Lodge D111*, 681 F.Supp.

1570 (S.D.Ga. 1987). That case is similar to the one under consideration by this court, and both cases are indicative of a series of disputes around the nation involving the Boilermakers, IWNA and various local affiliates.

This court finds defendants' arguments unpersuasive. The provisions identified by defendants are not in conflict. They may be reconciled by reading the provisions in the Merger Agreement as pertaining only to the merger. Pursuant to Article V, Section 3 of the Merger Agreement, the local lodges, D233, D237 and D238, retained their assets upon the consummation of the merger. However, that section does not permit the local lodges to retain their local treasuries after the local lodges have disbanded. The local lodges, not the individuals composing the lodges, shall retain the assets. Upon the disbandment of the lodges and the revocation of the charters, the assets must, pursuant to the previously cited provisions in the Boilermakers' constitution, be forfeited to the parent international. The local lodges agreed to this requirement. The court finds it obvious "that the enforcement of clauses requiring a local to surrender its assets upon disaffiliation contributes to the stability of labor organizations." *Local Lodge D111*, 681 F.Supp. at 1574 [citations omitted]. Such enforcement discourages the raiding by one international of another's local affiliates. Further, such enforcement encourages local affiliates to exercise reason and deliberation rather than anger and impulse

---

**4.** Article V, Section 6 of Boilermakers' constitution reads as follows:

Any Local Lodge having less than ten (10) active members shall be automatically disbanded and its Charter returned to the International Brotherhood, together will all books, records, properties, funds and assets (including trusts, trust funds or other trust properties held, operated or controlled by such Local Lodge) owned or held by such Local Lodge at the time of such disbanding, which shall become the property of the International Brotherhood.

Also relevant is Article XXXVI, Section 2 of Boilermakers' Constitution, which reads as follows:

The funds and property of a subordinate body are trust funds for the benefit of its members

and shall not be divided in any manner among the members of the subordinate body. Upon the surrender, forfeiture or revocation of its charter other than through consolidation, all funds belonging to such subordinate body shall be forwarded promptly to the International Secretary/Treasurer and all real estate and other property owned or held by such body shall be immediately transferred and conveyed by the proper legal instrument to the International Board of Trustees of the International Brotherhood.

**5.** At the time of the merger, Allied's institutional structure consisted of three levels—the International, the District Councils, and the local affiliates.

when internal disagreements develop. Defendants' argument that the Merger Agreement and plaintiff's constitution are in conflict is untenable.

*Preliminary Injunction*

■ Having determined that plaintiff has validly imposed trusteeships upon the three local affiliates, the court must look to the propriety of issuing a preliminary injunction. Plaintiff ordinarily must establish the following four elements before preliminary injunctive relief is appropriate: (1) there is substantial likelihood that the movant will prevail on the merits; (2) the movant will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984). However, applying this standard to the trusteeship situation places the burden upon the parent international when the statutory scheme clearly provides that the local affiliate must by clear and convincing evidence show the invalidity of the trusteeship. *See Tile, Etc., Union v. Granite Cutters, Local 106,* 621 F.Supp. 1188, 1191 (E.D.N.Y.1985). Thus "[t]he parent is entitled to a preliminary injunction imposing a trusteeship on application unless the Local comes forward with adequate proof that the trusteeship is not being sought in good faith." *Sombrotto,* 449 F.2d at 921. In a trusteeship situation, then, courts relax somewhat the stringent standard ordinarily applied to requests for preliminary injunctive relief. Realizing, however, that the issuance of a preliminary injunction is an extraordinary and drastic remedy, this court will address the previously identified four elements.

There is a substantial likelihood that plaintiff Boilermakers will prevail on the merits. Plaintiff has presented clear evidence that both the local lodges and the defendant officers have engaged in financial malpractice, a permissible purpose under both plaintiff's constitution and the applicable statutes for the imposition of a trusteeship.

The second and third elements weigh heavily against defendants. Granting injunctive relief will result in no irreparable harm to defendants because the trustee is legally obligated to hold the property and assets of the local affiliates in trust. *See* 29 U.S.C. §§ 461–466. However, records, funds and other assets could be dissipated or lost if the injunction is not granted. Employing the trusteeship mechanism best preserves the status quo.

Finally, preliminary injunctive relief is not adverse to the public interest. Defendants agreed to all of the provisions here at issue. Upholding such contractual provisions does not violate any public interest. *Local Lodge D461,* 663 F.Supp. at 1035. Also, as stated previously, the enforcement of trusteeships contributes to the stability of labor organizations; such stability furthers the public interest.

■ It remains only for this court to address two final arguments raised by defendants. First, defendants assert that plaintiff's request for injunctive relief is barred by §§ 4(b) and 4(c) of the Norris–LaGuardia Act. *See* 29 U.S.C. §§ 104(b) and 104(c). In affirming this court's order in *Local Lodge D461,* the Eleventh Circuit specifically stated that "Section 104(b) of the Act is not applicable where, as in this case, the union has imposed a trusteeship for an appropriate purpose under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 462, *et seq.....*" *Local Lodge D461,* 835 F.2d 1439 (11th Cir.1987). Since this court has determined that plaintiff has imposed the trusteeships upon the local affiliates for a permissible purpose, injunctive relief is not barred in this case by the Norris–LaGuardia Act. *See International Brotherhood of Boilermakers v. Local Lodge D461,* 667 F.Supp. 870, 873 (M.D.Ga.1987).

■ Defendants also contend that plaintiff's request for injunctive relief is barred by the "schism" theory of labor law. A schism exists when there is a basic intra-union conflict over policy "at the highest level of an international union" *Georgia Kaolin Company,* N.L.R.B. Case No. 10–RC–13412 (December 16, 1987), citing *Her-*

*shey Chocolate Corp,* 121 N.L.R.B. 901, 907–08 (1958). Defendants contend that a schism, if it exists, affects the validity of plaintiff's constitution and renders plaintiff incapable of acting as the local affiliates' collective bargaining agent.

As a preliminary point, the court notes that the existence of a schism and any resulting disaffiliations are issues defendants have vigorously contended are properly heard by the NLRB and are beyond the jurisdiction of this court. Defendants rely for their schism argument upon certain decisions involving plaintiff Boilermakers and certain of its local affiliates issued by regional directors of the NLRB which have held that a schism occurred. *See* Defendants' Post–Trial Memorandum of Law and attached Exhibits 17, 18 and 19.

However, in the case cited above, *Georgia Kaolin Company,* the full Board has reversed one of those decisions. The NLRB found that "no conflict has occurred at the highest level of the International." *Georgia Kaolin Company,* N.L.R.B. Case No. 10–RC–13412 at 8. This court agrees that no such conflict has occurred within plaintiff Boilermakers. The disaffiliation attempts by the three local lodges gained their impetus from certain individuals' dissatisfaction with the election results at the convention. Such dissatisfaction does not mean that a schism has occurred. The delegates at the convention manifested no conflict with either the merger or the election. There simply was no basic intraunion policy dispute at the highest level.

Based upon the reasoning in *Georgia Kaolin Company,* and in the interests of consistency in the interpretation of labor laws, this court determines that a schism has not occurred and thus cannot bar plaintiff's request for injunctive relief.

Based upon the foregoing, this court ORDERS that all interference with plaintiff's trusteeships of Local Lodges D233, D237 and D238 desist immediately. Each local is ORDERED to turn over to the appointed trustees within fifteen days all funds, books, assets and properties that were in existence prior to the purported disaffiliation dates. (Local Lodge D233—November 17, 1986; Local Lodge D237—November 25, 1986; Local Lodge D238—December 20, 1986). Defendant IWNA is hereby ORDERED to pay into the court's registry within fifteen days the total amount received from the three local affiliates prior to April 10, 1987. The amount accrued totals $40,892.00. This amount will remain with the court either until the ultimate merits of this case are decided or until further order of this court.[6]

The trustees are ORDERED to administer the trusteeships in accordance with both plaintiff's constitution and with the applicable statutes. The trustees are ORDERED not to interfere with the normal use for union activities of any union hall or other property held in trust.

---

**6.** The April 10, 1987, date is used by the court for convenience and consistency. When and if the recognition issues are resolved, this date will be re-examined.