**TRANSPORT WORKERS UNION OF PHILADELPHIA, LOCAL 234,**

v.

**TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO**

**No. CIV.A.00–4815.**

United States District Court, E.D. Pennsylvania.

Jan. 11, 2001.

Howard J. Kaufman, Peter J. Leyh, Kaufman, Coren, Ress, Weidman and Silverang, Philadelphia, PA, for Transport Workers Union of Philadelphia, Local 234.

Neal Goldstein, Gail Lopez–Henriquez, Freedman and Lorry, P.C., Philadelphia, PA, Betty Grdina, Yablonski Both & Edelman, Washington, DC, Susan Davis, Cohen Weiss and Simon LLP, New York, NY,

Joseph J. Vitale, Cohen Weiss and Simon LLP, New York, NY, for Transport Workers Union of America, AFL–CIO.

Peter J. Leyh, Kaufman, Coren, Ress, Weidman and Silverang, Philadelphia, PA, for Steve Brookens, Bruce Bodner, Jeffrey Brooks, Sr., Willie Beckton, Charles Clancy, Craig Holmes, Brian Pollitt, Abe Tisdale, Darren Moore.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiff Transport Workers Union of Philadelphia, Local 234's ("Local 234") and defendant Transport Workers Union of America, AFL–CIO's ("TWU" or the "International") cross motions for preliminary injunctive relief. For the reasons set forth below, the court will grant TWU's motion.

## I. BACKGROUND

TWU and Local 234 are unincorporated labor organizations. In June 2000, TWU President Sonny Hall sent a fact finding team to investigate reports of misconduct by members of Local 234's Executive Board and staff.[1]

On August 25, 2000, Hall filed a Notice of Trusteeship containing twenty-four charges against Local 234's Executive Board. (Joseph J. Vitale Decl. dated Dec. 1, 2000, ("Vitale Decl.") Ex. 1 at 1.) The charges alleged financial malpractice, subversion of union democracy and discord among the members of Local 234's Executive Board.[2] On August 28, 2000, TWU appointed a Subcommittee of the International Executive Council to hear the charges.[3] Id. at 2.

---

1. Steve Brookens is the President of Local 234; Bruce Bodner, Jean Alexander and Charles Grugan are Vice Presidents; Jeffrey Brooks, Sr. is the Recording Secretary; and Harry Knittel is the Secretary–Treasurer. These six elected officers, together with staff members appointed by Brookens, comprise Local 234's Executive Board.

2. Hall supplemented and amended those charges on September 18, 2000. Id.

3. On August 29, 2000, Local 234 objected to International Vice President Michael Bakalo serving on the Subcommittee on the grounds of his prior involvement in conduct which was at issue in the charges. The next day, Bakalo was taken off the Subcommittee and was ultimately replaced by International Vice President Larry Martin. (Vitale Decl. at 2; Joint Ex. 8.) Bakalo was appointed to act as

On September 22, 2000, Local 234 filed a Complaint, seeking to enjoin the hearing scheduled before the Subcommittee by asserting that it would not be "fair" under 29 U.S.C. § 464.[4] By Order dated September 29, 2000, United States District Judge Bruce W. Kauffman denied Local 234's motion to enjoin the hearing.[5]

The Subcommittee's hearing on the charges began on October 3, 2000 and ended November 3, 2000, continuing for 18 days. (Vitale Decl. Ex. 1 at 3.) Hearing sessions were scheduled to accommodate the medical condition of Brookens and were open to the membership. *Id.* Ex. 1 at 3–4. TWU, represented by Bakalo, presented 11 witnesses and · 87 exhibits in support of the charges. *Id.* Ex. 1 at 3. Local 234, represented by Vice President Bruce Bodner, who also happens to be an attorney, presented 15 witnesses and 150 exhibits in defense. *Id.* Ex. 1 at 3–4.

On November 21, 2000, the Subcommittee issued Findings of Fact, Conclusions and Recommendations to the International Executive Council, finding Local 234 guilty of 15 of the charges against it.[6] On November 30, 2000, the International Executive Council convened to discuss and deliberate on the Subcommittee's report, issued a Resolution unanimously adopting it in its entirety, and imposed an immediate trusteeship over the affairs of Local 234.[7] On December 1, 2000, Harry Lombardo, who was appointed as Trustee, appeared at Local 234's offices to begin carrying out his duties.[8] However, Local 234 informed him that it was refusing to comply with the trusteeship and that it would comply only if Lombardo secured a court order.

On December 1, 2000, TWU filed a counterclaim to Local 234's Complaint and requested a temporary restraining order and preliminary injunction to enforce the trusteeship. On the same date, Local 234 filed a Second Complaint, alleging that TWU imposed the trusteeship in violation of the LMRDA. On December 4, 2000, Judge Kauffman heard oral argument on TWU's request for a temporary restraining order and denied relief. Before the court are cross-motions for preliminary injunctive

---

prosecutor. (Vitale Decl. at 2 n. 3.) Local 234 did not object.

**4.** Title III of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 461–466, governs the imposition of trusteeships. Section 464 provides that a trusteeship imposed "in conformity with the procedural requirements of [the labor organization's] constitution and bylaws and authorized or ratified after a fair hearing" is presumed valid for a period of eighteen months. 29 U.S.C. § 464(c). This court has jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185; 29 U.S.C. §§ 462, 464(a); and 28 U.S.C. § 1331.

**5.** By Order dated December 14, 2000, this case was transferred to the undersigned in accordance with the court's procedure for random reassignment of cases.

**6.** The Subcommittee found that Local 234's Executive Board: (1) failed to submit timely per capita payments to TWU; (2) failed to timely establish a pension plan for its clerical employees; (3) failed to meet their fiduciary responsibility by completely ignoring serious financial issues; (4) failed to submit timely financial reports; (5) interfered with the Secretary–Treasurer carrying out his duties; (6) routinely reimbursed its officers and staff without requiring written documentation or explanation of the reasons for the expenses; (7) failed to take any steps to control its spending and incurred unwarranted expenditures; (8) pressured two elected officers into resigning their positions; (9) interfered with a prospective job offer to a member; (10) threatened twelve officers with removal for having engaged in free speech; (11) disrupted a membership meeting in an attempt to prevent free speech; (12) enlisted an employer's assistance in an attempt to evict a member engaged in free speech; (13) prevented an elected section officer from handling grievances; (14) failed to call Joint Executive Committee meetings; and (15) engaged in in-fighting and factionalism to the detriment of Local 234's operations.

**7.** Hall, Bakalo, George Roberts, John Bland and Harry Lombardo did not vote, although they were entitled to do so.

**8.** Lombardo is an International Vice President of the TWU and a past president of Local 234.

relief: TWU seeks an injunction enforcing the trusteeship and Local 234 seeks an injunction to prevent it. This court held a status conference on the matter on December 18, 2000 and preliminary injunction hearings on December 27, 2000, December 28, 2000 and January 5, 2001.

## II. *DISCUSSION*

▮ To obtain a preliminary injunction, "plaintiffs must show both (1) that they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir.2000). If relevant, the court should also consider the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest. *Id.* However, the statutory scheme permitting trusteeships in the labor organization context "clearly evidences an expectation that disputes over trusteeships would be litigated with the trusteeship in effect" and "if this burden were rigidly imposed on a parent union seeking to enforce a trusteeship against one of its resisting locals, the local, by failing to comply with its obligation under the union constitution to accept a trusteeship lawfully imposed, could turn the statutory scheme for handling the trusteeship problem on its head." *Nat'l Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 920–21 (2d Cir.1971); *Int'l Bhd. of Boilermakers v. Local Lodge D238*, 678 F.Supp. 1575, 1583 (M.D.Ga.1988) (stating that "applying this standard to the trusteeship situation places the burden upon the parent international when the statutory scheme clearly provides that the local affiliate must by clear and convincing evidence show the invalidity of the trusteeship").

▮ Thus, in keeping with the intent of Congress, a preliminary injunction is presumptively valid to impose a trusteeship if: (1) the trusteeship was established in accordance with the provisions of the union's constitution and bylaws; (2) the trusteeship was authorized or ratified after a fair hearing; and (3) the trusteeship was installed for a permissible purpose.[9] 29 U.S.C. §§ 462 & 464; *Regan v. Williams*, Civ.A.No.86–643, 1986 WL 8413, at *2 (W.D.Pa. May 16, 1986) (citations omitted); *Int'l Bhd. of Boilermakers v. Local Lodge D31*, 694 F.Supp. 1203, 1207–08 (D.Md. 1988) (citations omitted); *Local Lodge D238*, 678 F.Supp. at 1580 (same). Enforcement of trusteeships "by way of preliminary relief not merely does not violate equitable principles but is the resolution most consistent with the legislative scheme here at stake." *Sombrotto*, 449 F.2d at 921. The "parent is entitled to a preliminary injunction imposing a trusteeship on application unless the local comes forward with adequate proof that the trusteeship is not being sought in good faith." *Id.*

▮ In this case, it is not contested that the trusteeship was established in accordance with the provisions of the union's constitution and bylaws.[10] However, Local

9. Under the LMRDA:
   Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
   29 U.S.C. § 462.

10. Under the TWU Constitution:
   In the event the International President shall have reason to believe that any Local Union is failing to comply with any provision of the Constitution or conducts its affairs in a manner which is detrimental to the interests of the Union, he/she may institute proceedings against the Local Union, with due notice of hearing in writing delivered to the Local President and to the Local Financial Secretary–Treasurer, specifying the section or sections of the Constitution violated or the nature of the conduct, before the International Executive Council, or a subcommittee thereof, designated either by the Council or by the Internal Administrative Committee. Upon the basis of the

234 asserts that it did not receive a "fair hearing" and that the trusteeship was not installed for a permissible purpose. (Compl. dated Dec. 1, 2000 ("Compl.II") ¶¶ 15–17.) Local 234 alleges that it did not receive a fair hearing because it was: denied the right to have outside counsel; denied pre-hearing discovery; denied more than one continuance; and denied an adequate opportunity to cross examine witnesses. *Id.* ¶ 16. Local 234 also asserts that the hearing was not fair because relevant evidence was excluded and because Bakalo, who was initially appointed to serve as a member of the Subcommittee, instead served as prosecutor. *Id.* In the Order dated September 29, 2000, which the court incorporates herein by reference, the court addressed Local 234's objections regarding the presence of outside counsel, discovery and time to prepare for the hearing. *Local 234 v. TWU,* No.Civ.A.00–4815, 2000 WL 1521507, at *1–2 (E.D.Pa. Sept.29, 2000). Further, as the court has already recognized, the LMRDA "does not require formal quasi-trial procedures at a trusteeship hearing." *Id.* at *2. Under 29 U.S.C. § 464, the minimum requirements for a fair hearing are: notice of the charges; presentation of evidence and witnesses; and an opportunity for cross examination. *Int'l Bhd. of Boilermakers v. Local Lodge D461,* 663 F.Supp. 1031, 1034 (M.D.Ga.1987).

Local 234 does not contest that it received notice of the charges or that evidence and witnesses were presented at the hearing before the Subcommittee. The record shows that written notice identified the charges; that Local 234 was notified of the date, time and location of the hearings; that the hearings were open to Local 234's membership; and that evidence was presented supporting the imposition of the trusteeship. There is no evidence in this

record to suggest, as Local 234 asserts, that the proceedings before the Subcommittee were a mere "formality." Although Local 234 alleges that it did not have an "adequate" opportunity to cross-examine witnesses, the record shows that it had ample opportunity to do so. For example, TWU's first witness, John Kerrigan, produced approximately 39 pages of transcript on his direct testimony and 109 pages on cross-examination; likewise, Harry Knittel produced 126 pages of direct testimony and 313 on cross; Al Miller produced 50 pages of direct testimony and 174 on cross; and Sabin Rich produced 30 pages of direct testimony and 211 on cross. (Joint Exs. 2, 3, 4 & 5.) Although Local 234 argues that TWU's prosecutor attempted to limit its cross-examination of witnesses, Bruce Bodner, Local 234's advocate at the hearing, stated that Bakalo "didn't succeed" in "interfering with my right to cross-examine his witnesses." *See* Vitale Decl. dated Dec. 19, 2000 ("Vitale Decl. II"), Ex. 1 at 135–36 (attaching deposition). The court finds that Local 234 had an opportunity for cross-examination and that the elements of a fair hearing under 29 U.S.C. § 464 were satisfied.

■ Local 234's contention that the trusteeship was not installed for a permissible purpose is unavailing. Legitimate reasons for imposing a trusteeship that benefits a union's membership include: correcting corruption or financial malpractice; assuring the performance of collective bargaining agreements or other bargaining duties; and restoring democratic procedures. 29 U.S.C. § 462. In the instant case, the International Executive Council's Resolution imposed the trusteeship for financial malpractice, subversion of union democracy, and discord among Local 234's Executive Board. (Vitale Decl. Ex. 2 at 2.)

hearing the International Executive Council is authorized to render a decision, dismissing the charges, suspending or revoking the charter of any such Local Union, or directing such other action as may be necessary to secure compliance with the Constitution,

or otherwise to protect and preserve the effectiveness and the best interests of the Union. The decision of the International Executive Council shall be subject to review by the International Convention.
TWU Const., Art. V, sec. 4.

The International Executive Council stated that the "most serious" of the charged violations was the subversion of union democracy.[11] *Id.* For example, it found that Local 234's Executive Board, directed by its president, pressured and threatened political opponents to induce them to resign; prevented opponents from performing official duties; and retaliated against and suppressed speech. *Id.* Ex. 1 at 62–67 & Ex. 2 at ·2. As a specific example, TWU found that Local 234 interfered with the Secretary–Treasurer from carrying out his duties by: reducing his salary; humiliating him before the membership and management; changing the locks to his office; assigning him to a small table in the bookkeeper's office; not taking his phone calls; and refusing to give him materials that were necessary to perform his job. *Id.* Ex. 1 at 22–24 & 41. Local 234 also threatened to suspend twelve officers because they filed charges against the president and other members of the Executive Board. *Id.* Ex. 1 at 47. TWU concluded that immediate action by the International was required to restore dem-

ocratic procedures to Local 234. *Id.* Ex. 1 at 67 & 74.

The International Executive Council also found a pattern of "serious financial malpractice" by Local 234's Executive Board.[12] *Id.* Ex. 2 at 2. For example, Local 234 was 7 months in arrears in its per capita payments when charges were filed; it maintained no checks and balances on its spending; it failed to file monthly financial reports; and it failed to require documentation in support of union credit card expenses which resulted, in one instance, in 171 questionable expenditures. *Id.* TWU recognized that, after charges were filed against Local 234, it took belated steps to correct some of these problems, but found that it was "unlikely that the Local could be restored to financial and administrative stability without action by the International." *Id.*

▮ It is undisputed that both correcting financial malpractice and restoring democratic procedures are valid purposes for the establishment of a trusteeship under 29 U.S.C. § 462.[13] Thus, the court

11. Case law does not support Local 234's crabbed assertion that restoring "democratic procedures" under 29 U.S.C. § 462, only pertains to cases involving election disputes. *See C.A.P.E. Local Union 1983 v. Int'l Bhd. of Painters and Allied Trades*, 598 F.Supp. 1056, 1073 (D.N.J.1984) (finding that spending funds without membership's approval "seriously compromised the ... democratic right ... to determine the Local's direction").

12. "Malpractice" has been defined as "an injurious, negligent, or improper practice." *Donatello v. McKenzie*, 826 F.Supp. 780, 782 (S.D.N.Y.1993) (citations omitted). Contrary to Local 234's assertion, it "does not imply corruption." *Id.*

13. Local 234 argues that the TWU's decision to impose a trusteeship to correct these problems was "draconian" and that its conduct does not meet "the high standard of misconduct necessary to warrant the imposition of a trusteeship." (Compl. II ¶¶ 1, 9 & 13.) However, Congress intended that decisions by international officials to impose trusteeships be upheld and not rejected on the basis of disputes over the judgment or necessity of their imposition. *See Teamsters Local Union No.*

*406 v. Crane*, 848 F.2d 709, 714–15 (6th Cir. 1988) (stating that "it would unreasonably impair the independence of labor unions to allow much scope at this point for the Government to review the judgment of union officials upon the needs of the organization or the best means of effectuating them") (internal quotations and citation omitted). There is, in fact, a well-established policy of avoiding judicial interference in union self-governance and internal affairs. *Int'l Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d 786, 790 (2d Cir.1994) (recognizing purpose of presumption of validity is "to prevent federal courts from intervening in internal union affairs"). Congress' purpose in enacting the LMRDA was "to ensure that local affairs are governed by local members under democratic processes, with a minimum of outside interference." *Morris v. Hoffa*, No.Civ.A. 99–5749, 1999 WL 1285820, at *7 (E.D.Pa. Dec.28, 1999) (citations omitted). As stated by the Second Circuit:

> Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage

finds that the trusteeship was properly established under TWU's Constitution and bylaws and for a permissible purpose under 29 U.S.C. § 462. As these elements have been established, the trusteeship is presumptively valid. 29 U.S.C. § 464(c). Accordingly, the burden shifts to Local 234, which must overcome the presumption with "clear and convincing proof" that the imposition of the trusteeship was not in good faith. 29 U.S.C. § 464(c); *Local Union No. 810*, 19 F.3d at 790 (same); *Sombrotto*, 449 F.2d at 922 (same); *Crane*, 848 F.2d at 712 (same).

Here, there is no proof that TWU acted in bad faith in establishing the trusteeship. Local 234 attempts to demonstrate TWU's bad faith not by introducing direct evidence of illegitimate motives but by arguing that the reasons offered by TWU do not justify its decision. The court finds that Local 234 has fallen short in its effort to satisfy its statutory burden of proof. The court can only speculate as to Local 234's proffer of potential political motives lurking behind TWU's decision to impose the trusteeship.[14] TWU, however, "did not

those operations except in the very limited instances expressly provided by the [LMRDA].... General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations. *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir. 1964) (quoted in *Felton v. Ullman*, 629 F.Supp. 251, 254–55 (S.D.N.Y.1986)); *see also Local Union No. 810*, 19 F.3d at 793 (federal courts should not "busy themselves with the internal affairs of unions, a task for which they are ill-equipped"). The role of this court, then, is "to ensure that the instant politically-charged controversy is resolved in accordance with the ... [union's] democratic process as mandated by Congress and by [its constitution]." *Morris*, 1999 WL 1285820, at *7.

14. Local 234 asserts that the trusteeship was imposed because Lombardo did not want Local 234's Executive Board to negotiate future contracts with the Southeastern Pennsylvania Transportation Authority ("SEPTA"). Even if the court assumes, *arguendo*, that this is true, there is no evidence whatsoever showing that the Subcommittee or International Executive

just pull allegations of mismanagement out of the air." *Crane*, 848 F.2d at 714–15. There is no evidence that the Subcommittee or the International Executive Council was motivated by bad faith. To the contrary, the court finds that TWU had more than an adequate basis to conclude in good faith that political factionalism, subversion of democracy and financial malpractice were deeply entrenched, protected practices and were of such magnitude as to warrant the imposition of a trusteeship. Local 234 has failed to meet its burden of showing by clear and convincing evidence that TWU's decision to impose a trusteeship was not made in good faith.[15]

The evidence shows that TWU is likely to succeed on the merits of its claim of right to impose the trusteeship. It has shown that the trusteeship was established in accordance with the provisions of its constitution and that it was authorized after a fair hearing for a permissible purpose.

Further, TWU would suffer irreparable harm should the preliminary injunction

Council did not act in good faith. Likewise, the court perceives no "bad faith" in the fact that TWU appointed Lombardo as trustee. First, there is no evidence in the record that the financial problems during Lombardo's tenure were as severe as they are under the current Executive Board's leadership: for example, a two or three month delinquency in per capita payments is not as egregious as a seven month delinquency. Similarly, there is no evidence that Lombardo's administration reimbursed expenses without requiring documentation or explanations. (Vitale Decl. Ex. 1 at 25–26.) Finally, the Subcommittee and Executive Council found that Local 234's current leadership engaged in a host of anti-democratic practices. The record is barren of similar misconduct by Lombardo's administration.

15. Local 234 fails to meet its burden even under the lower standard espoused by the Ninth Circuit, whereby a local may rebut the presumption of validity with only a "good faith doubt" as to whether the trusteeship was established for an improper purpose. *Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*, 584 F.2d 308, 316 (9th Cir.1978).

permitting a trusteeship not be granted. TWU asserts that the reputation of the union is at stake and that it and Local 234 would be harmed if it is not able to enforce its constitutional provisions, to which Local 234 is contractually bound, and deal immediately and forcefully with the allegations of financial malpractice and the lack of democratic procedures. (TWU's Reply Mem. of Law in Further Supp. of its Mot. for Prelim. Inj. Enforcing Trusteeship of Local 234 at 57–59.) Courts have found that harm to a union's reputation constitutes irreparable injury warranting a preliminary injunction. *See Local 810,* 19 F.3d at 794 (stating that "allegations of financial malpractice and undemocratic procedures severely test the allegiance of union members"); *Int'l Bhd. of Teamsters v. Local Union 705,* 827 F.Supp. 513, 516 (N.D.Ill.1993), appeal dismissed, No.93–2789 (7th Cir.1993) (finding irreparable harm to union's reputation where local operates under allegations of financial wrongdoing).

TWU also asserts that a preliminary injunction enforcing the trusteeship is necessary to correct financial malpractice. There is no dispute that Local 234 has been in arrears in its per capita taxes. Presently, it is $150,000.00 in debt. There is no dispute that for most of the year 2000, Local 234 did not file any monthly financial reports. (Vitale Decl. Ex. 1 at 69.) TWU found that there are virtually no checks and balances to monitor spending, no procedures requiring documentation for reimbursing union credit card expenses, and that the possibilities for credit card misuse was demonstrated by one case in which there were 171 questionable expenditures. *Id.* Ex. 1 at 68 & 70. Financial mismanagement is clearly disruptive. *See Rauscher v. Bakery, Confectionery & Tobacco Workers Int'l Union,* No.Civ. A.93–5629, 1993 WL 409192, at *2 (E.D.Pa. Oct.8, 1993) (recognizing potential disruption caused by financial mismanagement). As the Subcommittee and International Executive Council found:

There is no assurance that systems and procedures are in place to properly administer the Local in the future. There is no guarantee that the problems of conflict, mismanagement, blindness, negligence and/or incompetence which have plagued the Local have been permanently solved. There is no evidence that these longstanding problems in the Local are capable of being resolved without intervention by the International.

(Vitale Decl. Ex. 1 at 71.)

Further, a preliminary injunction enforcing the trusteeship is necessary to restore democratic procedures. TWU found that, without intervention, "Local 234 is likely to continue its course of anti-democratic behavior toward those members whom its officers perceive as political opponents." (Vitale Decl. Ex. 1 at 67.) There was no dispute that Local 234 interfered with the Secretary–Treasurer in the performance of his duties, and, on the issue of irreparability, the charges found by the Subcommittee in Section II.4 of its Findings and Conclusions, which were adopted by TWU's Executive Council, are especially pertinent.

On June 27, 2000, 12 elected Section officers filed charges against President Brookens, Vice President Bodner and other members of Local 234's Executive Board. *Id.* Ex. 1 at 46. The Section officers alleged, *inter alia,* that the Executive Board mistreated certain officers, in violation of Article XIX of the TWU Constitution. *Id.* On July 24, 2000, the Executive Board summarily dismissed the charges against it without a hearing. *Id.* On July 28, 2000, Vice President Bodner moved to suspend the 12 officers for filing the charges. *Id.* Bodner simultaneously tabled the motion, to give the complaining officers "an opportunity to retract" their statements and the facts in the charges. *Id.* Several days later, Bodner sent letters to the 12 officers, warning them that the motion to suspend them would be pursued if they did not rescind their charges. *Id.* Ex. 1 at 46–47.

The Subcommittee found that before Vice President Bodner sent the letters, he discussed the matter with a TWU official who told him that such letters would violate TWU's Constitution and was an improper attempt to punish the complaining officers for exercising free speech. (Joint. Ex. 10, Tab 2 at 59.) Despite this notice, Local 234 sent the letters.

The motion to remove the Section officers remained in its suspended, "tabled" status throughout the period when charges against Local 234's Executive Board were filed, during the Subcommittee's hearings on the charges, when the Executive Council unanimously approved the Subcommittee's findings, and while the proceedings began here in the United States District Court. The chilling, serious impact of Local 234's conduct, suppressing speech rights and threatening to remove officers, persisted for months while the trusteeship proceedings went forward and the proceedings in this court began. In fact, Local 234 did not inform the court until January 5, 2001, that it sent certified letters to the officers, finally withdrawing the motion to suspend them. *See* Bodner Aff. dated

Jan. 8, 2001 at 1 & Ex. A (attaching letter mailed December 22, 2000).

Local 234 did not withdraw its motion to suspend the officers until its continuing pendency became an issue in the preliminary injunction proceeding before this court, evidencing the doggedness with which Local 234's leadership persisted in its conduct. Letters rescinding the motion to suspend the officers could have been sent at any time, yet the motion remained pending for 5 months—long after the Subcommittee and International Executive Council found that the threat to suspend the officers was very real and continuing. (Vitale Decl. Ex. 1 at 66–67.) The pendency of the motion sent a message not only to the officers who were the subject of it, but also to the rest of Local 234's membership. The pendency of the motion shows the Executive Board's inclination to suppress the free speech rights of those who disagree with it, and the maintenance of the threats over time can only be seen as a message to Local 234's membership as to how the Executive Board will address dissident voices concerning important union affairs. On this issue, little more need be said as to finding of irreparability.[16]

The court will not go through each of the 15 charges that the Subcommittee and International Executive Council found against Local 234, or Local 234's belated attempts to correct some of them. Although the court agrees with Local 234 that the LMRDA sets forth remedial rather than punitive purposes for which trusteeships may be imposed, it does not agree that the problems facing Local 234 have all been "corrected." The allegations against Local 234 are serious. After 18 days of hearings, hundreds of documents and more than 25 witnesses, the Subcommittee and International Executive Committee found that 15 charges had been proven against Local 234 and:

> regretfully came to the conclusion that a trusteeship is the only option available ... which can meaningfully resolve the problems described here, restore democratic processes to the Local, correct the financial mismanagement issues, and return the Local to functioning as a collective bargaining representative in the best interest of the members.

---

**16.** Likewise, throughout the hearings before this court, Local 234 has repeatedly asserted that all the problems confronting it—the lack of democratic procedures, the financial malpractice, and discord—"have been dealt with" and that there is nothing left to fix. (Local 234's Proposed Findings of Fact and Conclusions of Law ¶ 618.) However, as the International Executive Council found, it "took the threat of trusteeship to light a fire" and force Local 234 to begin their attempt to correct the problems facing it. (Vitale Decl. Ex. 1 at 71.) For example, at the time trusteeship charges were filed against it, Local 234 was 7 months behind in its per capita payments. *Id.* Ex. 1 at 69 & Ex. 2 at 2. Not until TWU filed charges did Local 234 pay down four months of the arrears. *Id.* Ex. 1 at 69 & Ex. 2 at 2. Similarly, there was no dispute that for most of the year 2000, Local 234 did not file any monthly financial reports. In late September 2000, days before the hearings before the Subcommittee began, Local 234 filed 8 months of delinquent reports. *Id.* Ex. 1 at 69.

Additionally, the court finds that the denial of injunctive relief might give the local union officials an opportunity to move or destroy records. *See United Ass'n of Journeymen v. Local 90,* No.88–0349, 1988 WL 146609, at \*5 (M.D.Pa. March 16, 1988) (enforcing trusteeship); *Local Lodge D238,* 678 F.Supp. at 1583 (stating that "[g]ranting injunctive relief will result in no irreparable harm to [the Local] because the trustee is legally obligated to hold the property and assets of the local affiliates in trust ... [h]owever, records, funds and other assets could be dissipated or lost if the injunction is not granted").

Local 234 asserts that it will be irreparably harmed by a preliminary injunction imposing the trusteeship because Lombardo, rather than the members of the current Executive Board, would negotiate a new contract with SEPTA. In support of this assertion, Local 234 cites *Regan,* wherein the court found irreparable harm to the local where the trustee, rather than the local's elected officers, was to conduct collective bargaining negotiations. *Regan,* 1986 WL 8413, at \*3. That case, however, is inapposite. In *Regan,* there was a history of political turmoil between two factions within the local. *Id.* at \*1. The parent union favored the Unity Slate faction; however, the other faction, the Unified Slate, won the presidency. *Id.* After the installation of the new officers, an "emergency" trusteeship was imposed without a hearing or investigation. *Id.* The evidence before the *Regan* court showed that the appointed trustee, who was a member of the Unity Slate faction, the parent-aligned faction that lost the election, had "very different" views about the upcoming contract negotiations than the newly elected officers, who were members of the Unified Slate. *Id.* at \*1–3. In contrast, unlike *Regan,* the instant trusteeship was imposed after an investigation and a hearing, and there has been no showing that Lombardo's positions regarding the upcoming negotiations with SEPTA are "very different" from the Executive Board's.

■ The court also finds that preliminary injunctive relief is not adverse to the public interest. "[F]ederal labor statutes make it clear that a policy of judicial non-interference in internal union affairs fosters the public interest." *Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Local Union 34 v. N. Cal. Carpenters Reg'l Council,* 992 F.Supp. 1138, 1148 n. 11 (N.D.Cal.1997) (finding local not entitled to preliminary injunction to prevent trusteeship). Local 234 failed to comply with the constitutional provisions at issue, "conduct[ing] its affairs in a manner which is detrimental to the interests of the Union." (Vitale Decl. Ex. 1 at 61.) An injunction will give the Trustee no greater authority than that conferred in the parties' constitution. *See Local Lodge D461,* 663 F.Supp. at 1035 (recognizing same). Rather than violating any public interest, upholding such contractual provisions contributes to the stability of labor organizations. *Local Lodge D238,* 678 F.Supp. at 1583.

Finally, Rule 65(c) mandates that the court require posting of security, in an amount the court deems proper, for costs and damages that may be incurred or suffered by any party wrongfully restrained or enjoined. Fed.R.Civ.P. 65(c). Upon consideration of the record, the court will require TWU to post a bond in the amount of $1,000.00.

## III. CONCLUSION

For the reasons set forth above, TWU's motion for a preliminary injunction will be granted.

An appropriate Order follows.

(Vitale Decl. Ex. 1 at 74 & Ex. 2 at 1–2.) It is not the court's role to second guess TWU's conclusion, rather, the statute sets forth an 18 month period during which the trusteeship is presumed valid. 29 U.S.C. § 464(c). Local 234 has failed to rebut this presumption.

**670**

## ORDER

AND NOW, TO WIT, this 11th day of January, 2001, upon consideration of defendant Transport Workers Union of America, AFL–CIO's ("TWU") motion for a preliminary injunction, and plaintiff Transport Workers Union of Philadelphia, Local 234's ("Local 234") opposition thereto, IT IS ORDERED that said motion is GRANTED as follows:

Upon TWU's posting of security in the amount of one thousand dollars ($1,000.00), Local 234 and its officers, agents, representatives, employees and attorneys are PRELIMINARILY ENJOINED and RESTRAINED from:

(1) Refusing to deliver all property, funds, books, records and assets of any kind in their possession to Harry Lombardo as Trustee of Local 234, or his designee;

(2) Representing themselves as the authorized officers and/or representatives of Local 234, unless so authorized by the Trustee or his designee;

(3) Interfering in any manner with the conduct of the trusteeship by Lombardo or his designee;

(4) Refusing to provide a complete accounting of the financial condition of Local 234 and its funds to Lombardo or his designee, and refusing to provide any and all financial records and explanation for all receipts, disbursements and financial transactions of any kind by Local 234 or related to Local 234;

(5) Destroying, removing, secreting or altering the financial records of Local 234 or any financial records relating to Local 234.

SO ORDERED.